No. 95-342

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 249

STATE OF MONTANA,

        Plaintiff and Respondent:

  v.

ROCKY BRIAN GOODING,

        Defendant and Appellant.

FILED

OCT 21 1999

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Nineteenth Judicial District,
                    In and for the County of Lincoln,
                    The Honorable Robert S. Keller, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

                Ann C. German, Attorney at Law; Libby, Montana

        For Respondent:

                Hon. Joseph P. Mazurek, Attorney General; Carol Schmidt,
                Assistant Attorney General; Helena, Montana

                Bernie Cassidy, Lincoln County Attorney; Libby, Montana

Submitted on Briefs: April 8, 1999

Decided: October 21, 1999

Filed:

_____
                Clerk

Justice Jim Regnier delivered the opinion of the Court.

¶1     This is an appeal from the Nineteenth Judicial District Court, Lincoln County. On February 1, 1995, a jury found Defendant Rockey Brian Gooding guilty of felony sexual assault and felony sexual intercourse without consent. On June 20, 1995, the District Court entered judgment against Gooding. Gooding appeals from this judgment and certain evidentiary rulings. We affirm.

¶2     Gooding's appeal raises the following issue:

¶3     Did the District Court abuse its discretion by allowing the State to present the testimony of Tina Glover concerning statements made by Gooding?

FACTUAL   BACKGROUND

¶4     On July 22, 1994, the Deputy County Attorney for Lincoln County, Montana, filed an Information with the Nineteenth Judicial District Court charging Gooding with felony sexual assault, in violation of § 45-5-502, MCA. The State alleged that between 1987 and 1990, Gooding touched G.T.'s breasts and vagina and made her touch his penis. G.T. was born January 9, 1981 and was, at the time of the alleged incidents, Gooding's stepdaughter. On August 15, 1994, Gooding pled not guilty to the charge. A trial date was set for January 31, 1995. Subsequently, the court granted the State leave to amend the Information. On January 23, 1995, the State filed an Amended Information charging that, in addition to the original sexual assault charge, Gooding committed the offense of felony sexual intercourse without consent, in violation of § 45-5-503, MCA, or, in the alternative, the

offense of felony attempt, in violation of § 45-4-103, MCA. The State alleged that Gooding "engaged in or tried to engage in sexual intercourse" with G.T.

¶5 From 1984 to 1990 Gooding lived in Libby, Montana with Debra Lundin, his wife at the time, and four of her children from a previous marriage. Debra was employed by the Libby Care Center and Gooding stayed home with the children while she was at work. Gooding also ran a horse logging operation in the Big Creek area near Libby with the help of his wife, stepchildren, and his half-brother, Paul Boothman. The State alleged that Gooding sexually molested G.T. in his home, while Debra was at work, and at the horse logging operation.

¶6 The family moved to Spokane in 1990. Sometime after the move to Spokane, the family began attending the Sunrise Church of Christ. In approximately March 1993 Gooding began confiding with two members of the church, Gerald and Tina Glover, about prior acts of sexual molestation with G.T. At the time of these meetings, Gerald Glover was a nonordained deacon in charge of the church's food and clothing bank. Tina Glover, Gerald Glover's wife, did not hold an official church position.

¶7 The first meeting between Gerald Glover and Gooding occurred at the church. Gooding sought the help of a junior minister and Gerald Glover sat in on their meeting. In the following months, Gooding met with Gerald and Tina Glover in their home to discuss his problems associated with his conduct toward his stepdaughter. Gerald and Tina were both

3

**present for some of these meetings. However,** Gooding **would talk to** Tina alone **when** Gerald wasn't available.

¶8 In December 1994 Detective D. A. Routt of the Spokane County Sheriffs Department interviewed Gerald and Tina Glover during an investigation into Gooding's relationship with his stepdaughter. The Glovers informed Detective Routt that Gooding had revealed to them that he had sexually molested his stepdaughter while in Montana. Detective Routt relayed this information in a letter to the Lincoln County Sheriffs Department. On January 19, 1995, the State moved to add Gerald and Tina Glover as additional witnesses. The State also submitted a notice of intent to depose Gerald and Tina Glover because the Glovers would not be able to attend Gooding's trial. After a hearing, and without objections from Gooding, the court granted the State's motions.

¶9 On January 26, 1995, the State deposed Tina and Gerald Glover. Gooding filed a motion in limine the following day requesting the court to exclude from trial the deposition testimony of both Tina and Gerald Glover because statements made to them by Gooding were privileged under § 26-1-804, MCA, the "clergy-penitent privilege." The motion was briefed by both sides. The court held a hearing on Gooding's motion in limine and denied his motion to exclude the testimony of Tina and Gerald Glover. The District Court went on record to state that it was denying Gooding's motion because neither Tina nor Gerald met the standard of the statute.

¶10    A jury trial was held on January 31 and February 1, 1995. During the trial, the State offered and read Tina Glover's deposition to the jury. The State did not offer the deposition of Gerald Glover.  The jury returned verdicts of guilty on the charges of sexual assault and sexual intercourse without consent. On June 20, 1995, the District Court entered its Sentence and Judgment. The District Court sentenced Gooding to imprisonment in the Montana State Prison for a term of 20 years with 10 years suspended for the crime of sexual intercourse without consent, and for a term of 10 years with 5 years suspended for the crime of sexual assault, the sentences to run consecutively. Gooding appeals from this judgment and certain evidentiary rulings.

### STANDARD OF REVIEW

¶11    We review a district court's evidentiary rulings to determine whether the district court abused its discretion. *State v. MacKinnon,* 1998 MT 78, ¶12, 288 Mont. 329, ¶12, 957 P.2d 23, ¶12. A district court has broad discretion to determine whether evidence is relevant and admissible. *MacKinnon,* ¶12. Absent a showing of abuse of discretion, we will not overturn a court's evidentiary determination. *MacKinnon,* ¶12.

### DISCUSSION

¶12    Did the District Court abuse its discretion by allowing the State to present the testimony of Tina Glover concerning statements made by Gooding?

¶13    On January 19, 1995, the State moved to add Gerald and Tina Glover as additional witnesses and noticed their depositions. Gooding did not object and the court granted the

5

State's motions. On January 26, 1995, the State deposed both Gerald and Tina Glover. Gooding filed a motion in limine the following day requesting the court to exclude from trial the deposition testimony of both Gerald and Tina based on § 26-1-804, MCA, the clergy-penitent privilege. On January 30, 1995, the District Court held a hearing on Gooding's motion in limine. The court ruled that Gooding's initial statements to Gerald and a junior minister were not privileged under § 26-1-804, MCA, because Gerald was simply "a bystander." The court also ruled that, given the evidence presented, Gooding's statements to Gerald or Tina were not privileged because neither Gerald nor Tina met the requirements of the statute. Lastly, the court noted that Tina was "a bystander" when Gooding first came to her house to talk with Gerald. Accordingly, the court denied Gooding's motion. At trial, the State presented Tina Glover's testimony, but not the testimony of Gerald Glover.

714     On appeal Gooding argues that the District Court erred by denying his motion in limine to exclude the testimony of Gerald Glover and Tina Glover. Gooding asserts that his statements to Gerald and Tina Glover were inadmissible under § 26-I-804, MCA, because he considered Gerald Glover to be a representative of his church and a spiritual advisor and he believed conversations held at the Glovers' house would be kept confidential,

¶15     Section 26-1-804, MCA, provides:

> **Confessions made to member of clergy.**   A clergyman or priest cannot, without the consent of the person making the confession, be examined as to any confession made to him in his professional character in the course of discipline enjoined by the church to which he belongs.

6

¶16     Initially, we observe that testimonial privileges must be strictly construed because they contravene the fundamental principle that the public has the right to everyone's evidence. See *MucKinnon,* ¶ 21 (citing *Trammel v. United States* (1980), *445* U.S. 40, 50, 100 S. Ct. 906, 912, 63 L. Ed. 2d 186, 195). However, we note that the clergy-penitent privilege must not be so strictly construed as to violate the right to the free exercise of religion guaranteed by the First Amendment of the United States Constitution as well as Article II, Section 5 of the Montana Constitution. See *MucKinnon,* ¶ 24.

¶17     We have had only one previous opportunity to address the application of the clergy-penitent rule.  In *MacKinnon,* we held that in order for confessions to be privileged under § 26-1-804, MCA, those confessions must be directed to clergy persons acting in their "professional character" and "in the course of discipline enjoined by the church." *MucKinnon,* ¶ 25. We explained that "professional character" meant that the clergy persons must be acting in their capacities as clerics or in their religious roles; "in the course of discipline enjoined" meant that the confession was made pursuant to the practice and discipline of the church. *MacKinnon,* ¶ 25.

¶18     In *MacKinnon,* we held that even under a broad interpretation of the statute, the clergy-penitent privilege was not implicated by MacKinnon's admissions. *MacKinnon*, ¶ 25. Before MacKinnon's admissions were made, he had been arguing with his former wife in a restaurant parking lot. Concerned about the nature of this conversation, his former wife suggested that they continue the conversation inside the restaurant in the presence of two

7

members of her church. Following the District Court, we assumed that the two church members were clergy for purposes of the privilege. However, we held that the District Court did not abuse its discretion by requiring the two church members to testify concerning admissions made by MacKinnon because they were not acting in theirprofessional character, the admissions were not made for the purpose of confessing or seeking religious guidance, counseling, admonishment, or advice, and MacKinnon had no reasonable expectation that his admissions would be held in confidence. *MacKinnon, ¶ 27.*

¶19     We decline to address whether the District Court abused its discretion concerning the admissibility of the testimony of Gerald Glover concerning statements made to him by Gooding. Even if these statements fell under the protection of the clergy-penitent privilege, Gooding does not assert that he was harmed or prejudiced in any way by the State's deposition of Gerald and the State did not present Gerald Glover's testimony to the jury. We will not reverse a conviction by reason of any error committed by the trial court unless the record shows that the error was prejudicial. See § 46-20-701, MCA.

¶20     We conclude that the District Court did not abuse its discretion by allowing the State to present the deposition testimony of Tina Glover. The District Court denied Gooding's motion to exclude the testimony of Tina Glover because, at least as to statements made by Gooding solely to her, she did not meet the standard of the statute, and as to statements made to Gerald Gooding in her presence, she was "a bystander."

¶21 Although we have never clarified the definition of "clergy" under § 26-1-804, MCA, nothing in the record suggests that Tina Glover was a clergy person. Tina testified that she was not a minister, clergyman, or deacon of the Sunrise Church of Christ. She stated that the church does not ordain women. She also stated that she did not have any special counseling role within the church. Therefore, the District Court did not abuse its discretion in admitting statements Gooding made to Tina Glover.

¶22 Gooding's statements to Gerald in Tina's presence were not privileged as to Tina, even if we were to conclude that Gerald met the definition of clergy. Section 26-1-804, MCA, states that "a clergyman or priest cannot be examined as to confessions made to him." The statute clearly creates a testimonial privilege for a "clergyman or priest"; the statute does not expressly create a testimonial privilege for a nonclerical church member for statements made in his or her presence. In interpreting a statute, we cannot add what has been omitted. See § 1-2-101, MCA.

¶23 Furthermore, we note there was sufficient evidence for the District Court to conclude that the other requirements of the clergy-penitent privilege were not met. In particular, the District Court could have concluded that Gooding's statements were not made to clergy persons acting in their "professional character." In an affidavit attached to Gooding's motion in limine, Gooding asserted that he considered Gerald Glover to be "a representative of my church and my spiritual adviser." He did not claim that Tina Glover fulfilled the same functions. Moreover, while Gerald Glover testified in his deposition that Gooding

9

approached him as "somebody to lean on to talk to and confess out [his] sins," Tina Glover testified that Gooding approached the Glovers because "he was concerned about his conduct and about going to jail." The evidence available to the District Court indicated that Tina was acting as an ordinary confidant rather than as a clergy person.

¶24 Also, as counsel for Gooding admits, there is no factual record to support a finding that these statements were made pursuant to the practices and discipline of the Sunrise Church of Christ. Even if we had concluded that either Gerald or Tina Glover was a member of the clergy for purposes of the clergy-penitent privilege, the evidence presented to the District Court did not indicate that these admissions were made "in the course of discipline enjoined by the church." See § 26-1-804, MCA. Accordingly, we conclude that the District Court did not abuse its discretion by admitting the testimony of Tina Glover.

¶25 Lastly, we note that regardless of our determination that the District Court did not abuse its discretion, Gooding was not prejudiced by the admission of Tina Glover's testimony at trial. The jury was presented with overwhelming uncontradicted evidence that Gooding was guilty of the acts alleged by the State. The victim testified that when she lived with Gooding in Libby, Gooding would make her come to his bedroom and get into his bed where he would touch her breasts and vagina. The victim also testified that Gooding forced her to have sexual intercourse while they were camping in the Big Creek area. The victim's brother substantially corroborated her testimony. Debra Lundin, the victim's mother, testified that she was made aware of Gooding's conduct toward her daughter while the family

resided in Libby-although, at the time, she believed his denials. Lundin also testified that Gooding admitted to her that after he had learned from a friend in Libby that Lundin had been molested, Gooding wanted to know what it was like. On the basis of the overwhelming evidence of Gooding's guilt, we conclude that Gooding was not prejudiced by the admission of Tina Glover's testimony. *See, e.g., State v. Fuhrman* (1996), 278 Mont. 396, 407-08, 925 P.2d 1162, 1169 (holding that erroneous admission of evidence without a limiting instruction was harmless given the overwhelming evidence of the defendant's guilt).

¶26 We affirm the judgment of the District Court.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

11