No. 99-082

IN THE SUPREME COURT OF THE STATE OF MONTANA
2001 MT 105N

---

STATE OF MONTANA,

Plaintiff and Respondent,

v.

LARRY LINK,

Defendant and Appellant.

---

APPEAL FROM: District Court of the Eighth Judicial District,

In and for the County of Cascade,

Honorable Thomas M. McKittrick, Judge Presiding

COUNSEL OF RECORD:

For Appellant:

Rochelle Wilson, Attorney at Law, Missoula, Montana

John Keith, Attorney at Law, Great Falls, Montana

For Respondent:

Honorable Mike McGrath, Attorney General; Tammy K. Plubell,

Assistant Attorney General, Helena, Montana

Brant S. Light, County Attorney, Great Falls, Montana

_____

Submitted on Briefs: May 4, 2001

Decided: June 19, 2001

Filed:

_____

Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1  Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2  Larry Link (Link) was charged with two counts of misdemeanor stalking in the Cascade County Justice Court and convicted after a bench trial. He appealed to the Eighth Judicial District Court, Cascade County, for a trial de novo. A jury subsequently convicted him of both stalking charges and the District Court sentenced him.

¶3  Link's trial counsel filed a notice of appeal and, thereafter, sought to withdraw from the case on grounds he found no nonfrivolous issues to raise on appeal. After allowing Link time to respond, this Court followed the usual *Anders* procedure, determined nonfrivolous issues might exist, allowed trial counsel to withdraw and remanded to the District Court for appointment of new counsel for Link on appeal. Appellate counsel now argues that the District Court abused its discretion in admitting certain evidence at trial. We affirm.

# FACTS

¶4  According to the record before us, including substantial testimony at trial, this case arises from an oral agreement between Link and Ed and Sue Warren under which Link sheetrocked and perfataped parts of the Warrens' new home. The parties ultimately disputed whether Link had finished the work and whether it was satisfactory, but the Warrens paid him the dollar amount on which the Warrens contended all had agreed. Link disagreed strongly about the amount he was owed and Ed paid him an additional $100. Link still felt aggrieved.

¶5  Link filed a wage claim against the Warrens with the Montana Department of

Labor and Industry. The day after the hearing officer ruled against him, Link threatened Ed by telephone, stating that if Ed did not give him more money, "I'm going to either get you or somebody close to you." Ed became "really worried . . . really nervous" about his family's safety. Thereafter, Link approached Sue at her place of employment and asked for more money. He visited the Warren home three days in a row, making threatening remarks on each occasion such as, if he did not receive more money, "some heads are going to roll." Ed became very upset, felt he had to keep watch on his children and worried about his wife. At the end of the final hearing on his wage claim, at which Ed prevailed, Link yelled at Ed, "I'm going to put a hit out on you, and I'm not done with you, Ed. I'll get even with you. I'm going to your church, I'm going to your work, and I'll make your life miserable."

¶6 Link did so. He contacted Sue's employer, relating that he would let everyone know that Ed and Sue were bad and dishonest and that he intended to put public pressure on them to get them to give him more money. Sue's employer was shocked and immediately told Sue about the conversation. A similar encounter with the Warrens' pastor occurred later, during which Link grew so angry and agitated the pastor became concerned for the Warrens. He, too, immediately told the Warrens about his meeting with Link. Link also made threats about Ed to a friend of the Warrens, who related the conversation to Ed. A similar contact took place between Link and Ed's employer; the employer could tell Link had intense feelings about the Warrens and related the conversation to Ed, who felt threatened and harassed.

¶7 Link also telephoned the Warren home three days in a row, calling Ed names and threatening to send a letter about the Warrens to their church members and the local newspaper. In addition, he leafletted at Sue and Ed's places of work. Ed felt he could not let his children out of his sight, and that there was nowhere to go and be left alone. He took Link's threats seriously and felt he was being watched all the time.

## DISCUSSION

¶8 Did the District Court abuse its discretion in admitting certain testimony at trial?

¶9 Link argues that the District Court improperly admitted evidence at trial. We review a district court's evidentiary rulings to determine whether the court abused

its discretion, keeping in mind that the district court's discretion regarding whether evidence is relevant and admissible is broad. *State v. Gooding*, 1999 MT 249, ¶ 11, 296 Mont. 234, ¶ 11, 989 P.2d 304, ¶ 11 (citation omitted).

¶10 Link's first contention is that the testimony set forth above about his contacts with people other than the Warrens, passed along to the Warrens by the people Link contacted, is "outside of the res gestae of the charged offense and, if allowed at all, should have been dealt with as testimony under Montana Rules of Evidence 404(b) as other acts." Link cites to no authority in support of either his "res gestae" or "other acts" position as required by Rule 23(a)(4), M.R.App.P. As a result, we decline to address this contention. *See State v. Anderson*, 1999 MT 60, ¶ 21, 293 Mont. 490, ¶ 21, 977 P.2d 983, ¶ 21.

¶11 Link further contends that the referenced testimony did not support, and was not relevant to, the stalking charge. Link is incorrect.

¶12 Section 45-5-220(1)(b), MCA, defines stalking in pertinent part as repeatedly harassing, threatening or intimidating the victim in person, by phone, by mail or "by other action, device or method." In *State v. McCarthy*, 1999 MT 99, 294 Mont. 270, 980 P.2d 629, the defendant asserted that a letter he addressed to a third party and the victim could not count as an episode of harassing or threatening conduct toward the victim. *McCarthy*, ¶¶ 20-21. There, as here, the party who received the communication passed along its general contents to the victim. We concluded that communicating via a third party the stalker knows is likely to relay the contact to the victim, thereby producing the desired effect of harassing or intimidating the victim, constitutes an action, device or method of stalking pursuant to § 45-5-220(1) (b), MCA. *McCarthy*, ¶ 22. We reach the same conclusion here. Therefore, the testimony to which Link objects supports-and is relevant to-the stalking charges.

¶13 Along the same lines, Link objects-as he did at trial-to the relevance of testimony from a police officer contacted by Ed in September of 1996 regarding the ongoing harassment by Link and Ed's stress, fear and-according to the officer-seemingly legitimate concern for the safety of his family. The officer also testified about his subsequent contact by telephone with Link to request no further contact with the Warrens, stating that Link was "pretty argumentative, . . . loud . . . used profanity on multiple occasions." In addition, Link advised the officer that he was

going to go to the Warrens' church because they would be there and he "wanted them to know that he was still around." We conclude that the testimony was relevant to the emotional distress/reasonable apprehension element of the stalking offense. We further conclude that the testimony was relevant to the mental state element of the offense, namely, purposely or knowingly causing the distress or apprehension. *See* § 45-5-220(1), MCA.

¶14  Finally, Link contends that the District Court erred in admitting prosecution evidence of a temporary restraining order issued against him in September of 1996, apparently arguing that, because the complaint did not allege he violated the order, the evidence was not relevant. The basis for the objection to this evidence advanced at trial, however, was that counsel was unaware of the restraining order and it was not in the file. The District Court overruled the objection on ascertaining that the restraining order had been in the file and available to Link's counsel throughout the proceedings.

¶15  A party is bound by the position advanced in the trial court and may neither change that position on appeal nor raise an argument for the first time on appeal. *Anderson*, ¶ 25 (citation omitted). Link's contention in this Court about the restraining order evidence is different from that advanced in the District Court and constitutes an argument first raised on appeal. Therefore, we decline to address it.

¶16  Affirmed.


/S/ KARLA M. GRAY

We Concur:

/S/ TERRY N. TRIEWEILER

/S/ JIM REGNIER

/S/ JIM RICE

/S/ W. WILLIAM LEAPHART