A98A2449. ALTERNATIVE HEALTH CARE SYSTEMS, INC. et al.
v. McCOWN.
(514 SE2d 691)

SMITH, Judge.

Shelley McCown brought this action against Alternative Health Care Systems, Inc., d/b/a Peachtree Hospice ("AHC"), Sandra H. Yates, R.N., and Judith Ann Musco, R.N., among others, seeking damages for trespass to and mutilation of her husband's body, intentional infliction of emotional distress, negligence per se in violating OCGA § 31-23-6, wanton failure on the part of AHC to train and supervise its employees, punitive damages, and bad faith penalties. McCown contended that AHC personnel wrongfully instructed an eye bank to remove her deceased husband's eyes after she had refused permission, then concealed their actions from her and falsified records pertaining to the eye removal.

After the first portion of a bifurcated trial under OCGA § 51-12-5.1 (d), the jury completed a special verdict form declining to award "special damages" and awarding "compensatory damages" against AHC, Yates, and Musco. The jury also found that the conduct of AHC justified the award of punitive damages. After the punitive damages phase of the trial, the jury returned a verdict against AHC for punitive damages, but declined to find specific intent to harm McCown. See OCGA § 51-12-5.1 (f). The motion for new trial by AHC, Yates, and Musco and the motion for judgment notwithstanding the verdict by AHC were denied; they appeal, asserting eleven enumerations of error. Finding no error, we affirm.[1]

1. While appellants assert the trial court erred in denying their motions for judgment on the pleadings, summary judgment, directed verdict, and j.n.o.v., they present no record references, argument, or citation of authority on this enumeration in their brief, and it is therefore deemed abandoned.[2] Court of Appeals Rule 27 (c) (2). To the extent that the issue of sufficiency of the evidence arises in other enumerations of error, the standard of appellate review for the denial of motions for directed verdict and j.n.o.v. is the "any evidence" test. *Ruben's Richmond Dept. Store v. Walker*, 227 Ga. App. 867 (1) (490 SE2d 536) (1997). Appellants must show that there was no conflict in

---

[1] We note that appellants have failed to follow Court of Appeals Rule 27 (c) (1), requiring that the sequence of argument in their brief follow the order of the enumeration of errors and be numbered accordingly. Appellants have divided their argument into sections that are not numbered and do not correspond with their enumeration of errors. At least two enumerated errors appear wholly unsupported by record references, citations, or argument. We nevertheless have attempted to address appellants' arguments to the extent they can be discerned.

[2] The propriety of a trial court's ruling on summary judgment, however, is moot after verdict and judgment. *Self v. Hall*, 233 Ga. App. 330, 331 (503 SE2d 918) (1998).

the evidence as to any material issue and that the evidence introduced, with all reasonable deductions therefrom, *demanded* a verdict in their favor. *Union Planters Nat. Bank v. Crook*, 225 Ga. App. 578, n. 2 (484 SE2d 327) (1997).

2. In a series of enumerations, appellants raise multiple contentions concerning McCown's failure to prove damages. First, they contest the award of punitive damages because it was foreclosed by an award for damages to the peace and feelings of McCown under OCGA § 51-12-6. Second, appellants claim damages under OCGA § 51-12-6 were not recoverable. Third, appellants contend special damages could not be awarded. None of these claims has merit, largely because of appellants' failure to provide a special verdict form quantifying the damages awarded by the jury on McCown's multiple causes of action.

(a) Appellants contend the trial court erred in allowing a verdict for punitive damages to be considered by the jury when an award was made under OCGA § 51-12-6 for a claim in which the "entire injury is to the peace, happiness, or feelings" of McCown. In essence, they complain that McCown received a double recovery. See *Southern Gen. Ins. Co. v. Holt*, 200 Ga. App. 759, 768 (5) (409 SE2d 852) (1991), rev'd in part on other grounds, 262 Ga. 267, 270 (2) (416 SE2d 274) (1992). But *Holt* also recognizes that a jury may award different measures of damages on multiple claims if the evidence establishes several distinct torts. Id. at 768 (5).

As noted above, a number of distinct tortious acts and causes of action were pled separately by McCown. For example, McCown asserted a claim of trespass on her quasi-property rights in the body of her deceased husband, arising from the removal of Mr. McCown's eyes despite her refusal to consent. See *Ga. Lions Eye Bank v. Lavant*, 255 Ga. 60, 61 (1) (335 SE2d 127) (1985). She alleged that AHC failed to train and supervise its nursing personnel and that AHC employees later falsified records and refused to communicate with her in an apparent attempt to conceal their wrongful removal of Mr. McCown's eyes. This court has distinguished between the mishandling of a deceased patient's body and the intentional infliction of emotional distress by the hospital's later conduct towards the survivors. They are separate causes of action. See *McCoy v. Ga. Baptist Hosp.*, 167 Ga. App. 495 (306 SE2d 746) (1983).

While the jury's award theoretically *could* have been based entirely on a claim of injury to the peace and feelings of McCown, it is equally possible that the jury awarded compensatory damages and punitive damages on one of McCown's other claims or on a combination of claims, as recognized by *Holt*, supra.

(b) Similarly, appellants contend that McCown was required to make an election before trial between damages under OCGA § 51-12-

6 and special damages. But, as noted above, McCown asserted multiple claims against appellants based upon different evidence. Several times during the trial, McCown's counsel laid out McCown's various causes of action and the measure of damages sought under each one.

Despite these clear indications that McCown was seeking recovery for distinct types of damages on several causes of action, appellants failed to present a special verdict form or object to the form of the verdict on any ground they now present. Their sole objection after the verdict was returned was that punitive damages could not be awarded in the absence of special damages. This is not a correct statement of the law. See generally *Holt*, supra, 262 Ga. at 270 (2).

In addition, appellants did not object to the verdict form as it was submitted to the jury by the trial court. Although McCown originally requested a more specific verdict form, one was never submitted by any party. The trial court informed the litigants that it expected "we are going to do a blank jury form and the parties will argue what the verdict ought to be," and the record does not reflect that appellants ever objected to this procedure. Without special interrogatories in the verdict form to distinguish between McCown's various claims and causes of action, any attempt to determine the jury's reasoning in calculating its award is futile. Appellants ask this court to speculate as to the findings of fact supporting the verdict, a task we will not undertake. *Strong v. Wachovia Bank*, 215 Ga. App. 572, 575 (4) (451 SE2d 524) (1994). We also note that the verdict simply found for McCown for compensatory damages in the amount of $418,000. It is not illegal on its face. Appellants did not request special findings in this case and did not object to the verdict form and have therefore waived any complaint of deficiency in the verdict. Id. at 576. See also *First Union Nat. Bank v. Boykin*, 216 Ga. App. 732, 735 (1) (455 SE2d 406) (1995).

(c) Appellants complain that McCown was improperly allowed to seek special damages. Once again, appellants have presented no record references, argument, or citation of authority for this enumeration, and it is deemed abandoned. But even had it been preserved for review, appellants cannot demonstrate any harmful error because the jury found against McCown on her claim for special damages. See generally *Ross C. Shaw, Jr., Inc. v. Reynolds*, 221 Ga. App. 548, 549 (2) (472 SE2d 125) (1996).

(d) In the course of appellants' arguments on damages, they attempt to assert additional claims of error based on the trial court's instructions to the jury on damages and the preclusive effect of a grant of directed verdict on other issues in the trial. But "[m]atters not enumerated as error will not be considered on appeal. An enumeration of error cannot be enlarged at the appellate level by statements in the briefs of counsel to include issues not made in the enu-

meration." (Citation and punctuation omitted.) *William N. Robbins, P.C. v. Burns*, 227 Ga. App. 262, 265 (2) (488 SE2d 760) (1997). Accordingly, we do not consider these additional claims.

3. Appellants contend that McCown failed to show evidence that their conduct was the proximate cause of the removal of Mr. McCown's eyes. But, construing the evidence in favor of the verdict, some evidence of proximate cause was presented. While appellant Musco may have responded affirmatively to a suggestion from appellants' counsel that the nurse who received McCown's refusal "equivocated" when she transmitted the information to her,[3] the first nurse denied this. She insisted that she gave Musco the paperwork indicating refusal, and Yates agreed that the form originally indicated a refusal. Other evidence indicated that Musco told the eye bank she had obtained consent. This was sufficient evidence to present the question of proximate cause to the jury.

4. Appellants also contend in several enumerations that the trial court erred in its instructions to the jury. We note that appellants have attempted to include multiple assertions of error in the trial court's charge to the jury within several other enumerations regarding proof of damages and negligence claims. The attempt to assert multiple errors within these enumerations violates OCGA § 5-6-40.

> When, as here, an appellant asserts more than one error within a single enumeration, this court in its discretion may elect to review none, or one or more, of the errors asserted within the single enumeration. This court may elect to treat the remaining assertions of error therein as abandoned.

(Citations and punctuation omitted.) *Willis Mining v. Noggle*, 235 Ga. App. 747, 748 (1) (509 SE2d 731) (1998). We choose to address only the following contentions.

(a) Appellants contend the trial court erred in instructing the jury on negligence claims. But during the charge conference, appellants' counsel repeatedly stated that "this is a medical negligence case." The jury was instructed on medical negligence because of *appellants*' insistence that the claims made by McCown amounted to claims of medical negligence. In addition, when appellants objected to this charge after it was given, the trial court pointed out that appellants had "insisted on giving that charge," and appellants' counsel acknowledged, "[t]hen it's invited error." If there was any error as to the trial court's charge regarding a negligence claim, it was

---

[3] In response to appellants' counsel's question, "So she equivocated?" Musco responded, "Huh-huh." No indication was given by the court reporter as to whether this was a positive or negative response.

directly aided and invited by the conduct of appellants. "A defendant cannot complain of a verdict which was brought about by a charge which he had requested. One cannot complain of a failure to charge that is aided by his own trial tactics, procedures, and conduct." (Citations and punctuation omitted.) *Taylor v. State*, 195 Ga. App. 314, 316 (4) (393 SE2d 690) (1990).

(b) Appellants' contention that the trial court created a cause of action for "negligent infliction of emotional distress" by charging the jury on negligence is without merit for the same reason. As discussed in Division 2, above, McCown asserted a claim for *intentional* infliction of emotional distress, and the trial court correctly instructed the jury that in order to award damages under this theory it must find all four elements of the tort, including intentional or reckless conduct and that the conduct must be outrageous and egregious. The trial court's charge plainly informed the jury that any such claim could not be based in negligence.

(c) Appellants also complain that the trial court instructed the jury on mental pain and suffering without the requirement of physical injury. It is true that in a claim for *negligence*, recovery for emotional distress is allowed only when there is some physical impact on the plaintiff, and that impact must be a physical injury. But if "the conduct is malicious, wilful or wanton, recovery can be had without the necessity of an impact. [Cit.]" *Ryckeley v. Callaway*, 261 Ga. 828 (412 SE2d 826) (1992).

McCown presented evidence that the conduct of AHC and its employees was wilful and wanton. Construed to support the verdict, the evidence shows that when McCown refused permission for the eye donation, the nurse on duty filled out the appropriate form indicating that McCown had refused permission. This nurse also testified that she gave the form to Musco, and she denied saying or doing anything that could have given Musco the impression that permission had been granted. According to the first nurse, the form was later altered by someone else, by inserting additional material and by crossing out the indication that McCown had refused permission and substituting an indication that she had consented. Yates acknowledged that she altered this form "to reflect after the fact what had happened." Musco testified that such an alteration would be improper and harmful.

When McCown received a "thank you" note from the eye bank, she became concerned and called and visited AHC, but the personnel refused to explain the discrepancy to her and told her they had lost her husband's file. McCown testified that she eventually spoke to Yates, and Yates told her that a mistake had been made and that she "should get over it, or get on with it." Yates testified that she was instructed by her supervisor not to have any contact with McCown.

This was sufficient evidence of wilful, wanton, and malicious conduct to support the charge.

5. We next consider whether the trial court erred in excluding the testimony of Elizabeth Walker. Walker is an ordained minister of the United Methodist Church. At the time of these events, she was completing her doctoral work and working as a pastoral counselor for Covenant Counseling Institute, which appointed her to AHC's hospice facility. While McCown and her family were at the hospice, AHC paged Walker and asked her to provide support to the McCown family. Walker testified that she was acting as a chaplain at that time. She testified that her purpose in speaking with McCown and her family was "to provide pastoral counseling, spiritual guidance and support to persons in need who requested it." After the trial court sustained McCown's claim of privilege, AHC made a proffer that Walker would contradict McCown's testimony that she had not considered an eye donation until it was mentioned to her by one of the nurses.

The trial court excluded Walker's testimony under OCGA § 24-9-22, which provides that "[e]very communication made by any person professing religious faith, seeking spiritual comfort, or seeking counseling to any . . . Christian or Jewish minister, by whatever name called, shall be deemed privileged." AHC contends this privilege was waived by McCown because her two daughters were present during the conversation with Walker. But Walker testified that she was made available to provide spiritual comfort to "the family." AHC has cited no authority for the proposition that the clerical privilege is waived by the presence of more than one person seeking spiritual comfort or counseling, and the law on other privileges indicates the opposite. For example, an attorney may consult with two individuals as joint clients, and the privilege exists until those clients' interests subsequently become adverse. *Peterson v. Baumwell*, 202 Ga. App. 283, 284-285 (2) (414 SE2d 278) (1991).

AHC also contends that McCown waived the clerical privilege by testifying to her conversations with Walker. Assuming without deciding that the clerical privilege may indeed be waived, but see *Security Life Ins. Co. v. Newsome*, 122 Ga. App. 137, 141 (176 SE2d 463) (1970) (Evans, J., concurring specially), McCown's very general testimony that the chaplain met with her family and offered spiritual support and comfort, and her deposition statement, in response to appellants' questioning, that she was not upset by anything Walker said, do not address in any way the substance of McCown's conversations with Walker and do not amount to a waiver of the privilege.

In addition, Walker's testimony is of doubtful relevance. Even if McCown initially considered making an eye donation, she ultimately decided against it and instructed the nurse not to permit it. No evi-

dence was presented that McCown ever gave permission to remove Mr. McCown's eyes to those responsible for arranging the procedure, or that Walker communicated any statement by McCown to the nurses or was involved in the decision to remove Mr. McCown's eyes. Under these circumstances, we cannot say that the trial court erred in excluding the testimony.

6. In another enumeration of error, appellants attempt to assert two distinct instances of alleged error: the trial court's refusal to disqualify McCown's counsel, and the trial court's exclusion of testimony regarding counsel's pre-litigation conduct. As noted in Division 4, above, the attempt to assert multiple errors within an enumeration violates OCGA § 5-6-40. We choose to address only AHC's arguments concerning disqualification of counsel.

The trial court did not err in refusing to disqualify McCown's counsel on the basis of alleged misconduct in interviewing former employees of AHC. This allegation is controlled adversely to appellants by our recent decision in *Sanifill of Ga. v. Roberts*, 232 Ga. App. 510 (502 SE2d 343) (1998). In *Sanifill*, this Court noted that Standard 47 of Rule 4-102 of the Rules & Regulations of the State Bar of Georgia forbids counsel to interview a party he knows to be represented by counsel. Id. While this provision has been construed by the Supreme Court of Georgia to forbid the interview of current employees of a corporate party, it does not include *former* employees. Supreme Court of Georgia Formal Advisory Opinion 94-3 interpreted Standard 47 to mean that a lawyer may properly contact and interview former employees of an organization that is represented by counsel to obtain nonprivileged information relevant to litigation against the organization provided, if the lawyer discloses the identity of his or her client and the former employee consents. Since the record shows that these conditions were met, no violation of Standard 47 has been shown. Id. at 512.

Appellants make other claims regarding alleged misconduct of McCown's attorneys during interviews with Musco and Yates and their eventually unsuccessful attempts to obtain affidavits. But "[t]he ultimate determination of whether an attorney should be disqualified from representing a client in a judicial proceeding rests in the sound discretion of the trial judge. [Cits.]" *Gene Thompson Lumber Co. v. Davis Parmer Lumber Co.*, 189 Ga. App. 573, 574 (1) (377 SE2d 15) (1988). Appellants have not demonstrated an abuse of discretion in the trial court's refusal to disqualify opposing counsel. See *Stephens v. Ivey*, 212 Ga. App. 407, 409-410 (4) (442 SE2d 248) (1994).

7. Finally, we decline to find that the jury's award of damages in the amount of $418,000 is excessive.

A heavy appellate burden lies on a defendant to establish

that a damage award either is inadequate or excessive within the meaning of OCGA § 51-12-12. In particular, appellate courts should be hesitant to second-guess verdicts where the damage award is based in any significant part on pain and suffering. This duty becomes most onerous when the jury is not required to render a special verdict as to damages.

*Joiner v. Lane*, 235 Ga. App. 121, 127 (5) (508 SE2d 203) (1998). As noted above, appellants did not submit a special verdict form and have not enumerated error as to the form of the verdict.

Moreover, an excessive or inadequate verdict is a mistake of fact rather than of law and addresses itself to the discretion of the trial judge who, like the jury, saw the witnesses and heard the testimony. In fact, the trial court's approval of the verdict creates a presumption of correctness which is not to be disturbed absent compelling evidence. . . . Of course, the appellate court may set aside a jury verdict under OCGA § 51-12-12 (a), but the threshold is extremely high. Our role is not to enter the jury box. The jury made its award in its enlightened conscience and based upon the evidence agreed to by all concerned. Its verdict stands.

(Citations and punctuation omitted.) *Moody v. Dykes*, 269 Ga. 217, 221-222 (6) (496 SE2d 907) (1998).

*Judgment affirmed. Johnson, C. J., and Barnes, J., concur.*

DECIDED MARCH 16, 1999 —
RECONSIDERATION DENIED MARCH 30, 1999 — 

*Kellogg, Saccoccia & Sigelman, Edward H. Kellogg, Jr., Steven W. Saccoccia, Christopher J. McFadden,* for appellants.

*Silfen, Segal, Fryer & Shuster, William R. Lester, Jeannine M. van der Linden,* for appellee.