221 P.3d 1045

**STATE of Arizona, Appellant,**

v.

**Manuel ARCHIBEQUE, Appellee.**

**No. 1 CA–CR 08–0048.**

Court of Appeals of Arizona, Division 1, Department A.

Dec. 15, 2009.

Andrew P. Thomas, Maricopa County Attorney, by Lisa Marie Martin, Deputy County Attorney, Phoenix, Attorneys for Appellant.

Law Offices of Christopher Winchell by Christopher Winchell, Phoenix, Attorneys for Appellee.

## OPINION

GEMMILL, Judge.

¶ 1 The State of Arizona appeals the trial court's order suppressing Manuel Archibeque's confession made to a clergyman within the meaning of Arizona Revised Statutes ("A.R.S.") section 13–4062(3) (Supp. 2009). For the reasons that follow, we conclude that Archibeque's statements to his Bishop are protected by the clergy-penitent privilege; the presence of Archibeque's wife during the confession does not vitiate this privilege; and Archibeque's disclosures to his wife made prior to his confession to the clergyman do not constitute a waiver of the privilege. We therefore affirm the trial court's ruling.

## BACKGROUND

¶ 2 Archibeque and his wife are members of the Church of Jesus Christ of Latter-day Saints ("Church"). In September 2005, Archibeque's wife contacted their Church Bish-

op, stating that Archibeque admitted to her that he had inappropriately touched his stepdaughter. Archibeque and his wife then met with the Bishop. During this meeting, Archibeque allegedly admitted sexually touching his stepdaughter.

¶3 Archibeque was subsequently indicted on one count of sexual conduct with a minor and three counts of molestation of a child, all class two felonies. The State gave notice that it intended to introduce the testimony of the Bishop at trial. Archibeque filed a motion to suppress the testimony of the Bishop "as privileged communications between communicant and clergy." The trial court conducted a hearing concerning Archibeque's motion, at which the Bishop testified. The trial court granted the motion to suppress, holding that the privilege contained in § 13–4062(3) applied and that it was not waived by the presence of Archibeque's wife. The State timely appealed and the trial court granted the State's request to stay the trial court proceedings.

¶4 We have jurisdiction according to Arizona Constitution Article 6, Section 9, A.R.S. § 12–120.21(A)(1) (2003), and A.R.S. § 13–4032(6) (Supp.2009) ("An appeal may be taken by the state from ... [a]n order granting a motion to suppress the use of evidence").

## ANALYSIS

¶5 Whether an evidentiary privilege exists is a question of law that we review de novo. *Blazek v. Superior Court In & For County of Maricopa,* 177 Ariz. 535, 537, 869 P.2d 509, 511 (App.1994). We also review de novo whether a party has waived an evidentiary privilege. *State v. Wilson,* 200 Ariz. 390, 393, ¶4, 26 P.3d 1161, 1164 (App.2001). We apply an abuse of discretion standard when we review any necessary fact finding conducted by the trial court in order to resolve these issues. *Id.*

### The Privilege Under § 13–4062(3) is Applicable

¶6 The State first argues that Archibeque's statements to the Bishop were not a confession in the course of discipline enjoined

by the Church. The clergy-penitent privilege enacted by our legislature is as follows:

A person shall not be examined as a witness in the following cases:

. . . .

A clergyman or priest, without consent of the person making the confession, as to any confession made to the clergyman or priest in his professional character in the course of discipline enjoined by the church to which the clergyman or priest belongs.

A.R.S. § 13–4062(3).[1]

¶7 A determination of whether the clergy-penitent privilege applies involves a three-step inquiry: (1) Is the person who received the confession a "clergyman or priest"? (2) Was the confession made while the clergyman or priest was acting in his professional capacity? (3) Was the confession made in the course of discipline enjoined by the church to which the clergyman or priest belongs? If the answer to all three inquiries is affirmative, then the clergy-penitent privilege under § 13–4062(3) applies, unless the privilege is waived.

¶8 With respect to the first question, the Bishop in this case constitutes a "clergyman or priest." To determine whether a person is a clergyman under § 13–4062(3), this court has propounded the following test: "whether a person is a clergyman of a particular religious organization should be determined by that organization's ecclesiastical rules, customs and laws." *Waters v. O'Connor,* 209 Ariz. 380, 385, ¶21, 103 P.3d 292, 297 (App.2004). This inquiry focuses on whether the church's ecclesiastical rules, customs, and laws recognize the person as a clergyman or priest. *Id.* at ¶20.

¶9 In this case, the person to whom Archibeque made his confession was a Bishop of the Church. The position and title of "Bishop" is officially bestowed and recognized by the Church. Archibeque's Bishop maintained an office at the local church over which he had jurisdiction. In response to a question posed by the trial court concerning whether the Church's Bishops are "ordained like a Catholic priest is ordained," the Bishop

---

1. *See also* A.R.S. § 13–3620(L) (Supp.2009).

testified that he received his ordination from someone with authority to act on behalf of the Church, and that he also received a certificate confirming his ordination. The Bishop testified that his duties concerning his local church included: managing the financial issues, including donations and tithing; addressing various ecclesiastical issues; handling the repentance process and confessions; and overseeing sacrament meetings, other Sunday meetings, and youth programs. He explained that the position of a Bishop in the Church is "a priesthood authority," and Bishops receive the members' confessions of their sins during the "repentance process." Further, the Bishop said that "a basic tenet of being a Bishop" is not revealing discussions with members and statements made in confidence.

¶ 10 We agree with the trial court that the official, recognized ecclesiastical role of the Bishop in this situation establishes that the Bishop was acting as a clergyman within the meaning of § 13–4062(3). We next consider whether Archibeque's confession was made to the Bishop while the Bishop was acting in his professional character.

¶ 11 "The 'professional character' element requires the communication to be directed to a clergyman in his or her capacity as a spiritual leader within his or her religious denomination." *Waters*, 209 Ariz. at 385, ¶ 22, 103 P.3d at 297. Here, Archibeque's confession to the Bishop took place in the Bishop's church office. The Bishop testified that he received the confession in his "role as the Bishop." The confession was made in furtherance of the repentance process as recognized by the Church. In describing the repentance process, the Bishop testified that the process is intended to provide a means of confession for the wrongs committed by the member and to help the member provide restitution for his or her wrongful acts. Accordingly, we conclude that Archibeque made his confession while the Bishop was serving in his professional capacity.

¶ 12 Lastly, we find that the confession was made in the course of discipline enjoined by the Church. This prong of the test focuses on "the duties and obligations of

the clergyman and the rules and customs of the cleric's faith." *Waters*, 209 Ariz. at 385, ¶ 23, 103 P.3d at 297. "[T]he clergy member receiving the confidential communication [must] be enjoined by the practices or rules of the clergy member's religion to receive the confidential communication and to provide spiritual counsel." *Id.* (quoting *State v. Martin*, 91 Wash.App. 621, 959 P.2d 152, 157 (1998), *aff'd*, 137 Wash.2d 774, 975 P.2d 1020, 1028 (1999)).

¶ 13 The Bishop in this case testified that the repentance process is an official church doctrine, and as a Bishop his duties included facilitating the repentance process. The Bishop described his role in the repentance process as follows:

[I]f someone comes to me, part of what we believe in is that if you commit a sin you need to repent. Some sins, depending on the gravity, require confession to a priesthood authority; mainly if you're in the ward to the [B]ishop. So if someone comes to me and they have committed something of that nature, I go over with them the steps to the repentance process.

Part of the Bishop's role in the repentance process is to provide spiritual counseling, as well as to provide members the opportunity to confess sins in accordance with the Church's repentance process. The Bishop testified that the offenses Archibeque has been charged with constitute serious offenses under the Church's doctrine that would require confession to a Bishop. Archibeque and the Bishop discussed the repentance process during their meeting. Archibeque confessed to the Bishop in accordance with established Church practices. We agree, therefore, that the confession was made in the course of discipline enjoined by the Church.

¶ 14 Because all three elements required for application of the privilege are satisfied, we conclude that Archibeque's alleged confession to the Bishop is protected by the clergy-penitent privilege of A.R.S. § 13–4062(3), unless the privilege was waived.

### The Privilege Under § 13–4062(3) Was Not Waived

¶ 15 The State next argues that even if the confession was privileged, Archibeque

waived the privilege by having his wife present during the confession. In resolving this issue, the approach taken by this court in *State v. Sucharew*, 205 Ariz. 16, 66 P.3d 59 (App.2003), is instructive. In *Sucharew*, counsel was hired for a juvenile and during the attorney-client meeting, the juvenile's parents were present. *Id.* at 21, ¶ 8, 66 P.3d at 64. The issue before the court was whether the attorney-client privilege was waived by the presence of third parties. *Id.* The court pronounced the general waiver rule that "[t]he presence of a third person will usually defeat the privilege on the ground that confidentiality could not be intended with respect to communications that the speaker knowingly allowed to be overheard by others foreign to the confidential relationship." *Id.* at ¶ 11 (quoting MORRIS K. UDALL, et al., LAW OF EVIDENCE § 71, at 128 (3d ed.1991)). However, this rule does not apply when the presence of a third party does not indicate a lack of intent to keep the communication confidential. *Id.* Thus, the court found the relevant inquiry to be whether the communicant reasonably understood the communication to be confidential "notwithstanding the presence of third parties." *Id.*

¶ 16 Applying a similar approach here, we conclude that the clergy-penitent privilege under § 13–4062(3) was not waived by the presence of Archibeque's wife if Archibeque believed the communication would remain private and such belief is reasonable.

¶ 17 Archibeque and his wife met with the Bishop in a private setting—the Bishop's church office—and behind closed doors. The Bishop described his role as "multifold," meaning as Bishop it was his duty to help in the repentance process and provide spiritual guidance for the family. The Bishop discussed marital issues with Archibeque and his wife, and he imparted spiritual advice concerning marriage. Although the Bishop testified that it was not necessary for the repentance process to have Archibeque's wife present, the Bishop explained that he had counseled couples together on previous occasions. The Bishop testified that confidentiality was a concern for both him and the Archibeques. He stated that an official manual of instructions for Bishops, provided by

the Church, required that meetings held in the furtherance of the repentance process must remain confidential. He also called a church "helpline" and received confirmation that such conversations are confidential. In keeping with this church policy, the Bishop assured the Archibeques that their communications would be confidential. Based upon the nature of the meeting and the relationships between the parties, we conclude that Archibeque believed the communications would remain confidential and that such a belief was reasonable.

¶ 18 Like other evidentiary privileges, the clergy-penitent privilege is subject to the common law doctrine of implied waiver. *Church of Jesus Christ of Latter–Day Saints v. Superior Court*, 159 Ariz. 24, 29, 764 P.2d 759, 764 (App.1988). This common law doctrine of implied waiver holds that an evidentiary privilege is waived by any "course of conduct inconsistent with observance of the privilege." *Bain v. Superior Court*, 148 Ariz. 331, 334, 714 P.2d 824, 827 (1986). Archibeque's conduct was consistent with a desire to observe the privilege.

¶ 19 There is no allegation in our record that Archibeque later disclosed the conversation with the Bishop to an individual not present during the confession. The meeting took place in private. Archibeque received assurances from the Bishop, in accordance with Church policy, that their conversation would remain confidential. On these facts, the presence of Archibeque's wife is not evidence of conduct inconsistent with a desire to maintain the privilege. Archibeque's wife was not a foreign and uninterested third party. Archibeque's conduct giving rise to this case and his participation in the repentance process through the Church had a direct effect upon his wife. Archibeque's statements to the Bishop in his wife's presence were made in furtherance of the confession and repentance process, and do not amount to "conduct inconsistent with observance of the privilege." *Bain*, 148 Ariz. at 334, 714 P.2d at 827. On this record, given the marital relationship and the spouse's interest in Archibeque completing the repentance process, we do not believe the spouse's

presence constitutes an implied waiver of the privilege.

¶ 20 The State, in attempting to distinguish the clergy-penitent privilege from the attorney-client privilege, argues that clergy-penitent determinations must be made according to the rules and customs of the clergyman's faith, and not based upon the "subjective expectations of the penitent." In support of its argument, the State cites *Waters.* We agree that, consistent with *Waters,* the initial determination of whether the clergy-penitent privilege is applicable requires consideration of the rules and customs of the clergyman's faith and is not determined by the subjective expectations of the penitent. *See Waters,* 209 Ariz. at 385, ¶ 25, 103 P.3d at 297. The *Waters* court was concerned with whether a communicant's statements to a music director were privileged under § 13–4062(3). *Id.* at ¶ 7. In finding that the statements were not privileged, the court looked at the rules and customs to determine whether a music director in the communicant's church constituted a clergy member within the meaning of § 13–4062(3). *Id.* at ¶¶ 2, 21. Waiver of an otherwise privileged communication was not before the court in *Waters,* nor did the court discuss the concept of waiver. For this reason, the State's reliance on *Waters* is misplaced. We also note again that the underlying rationale of the common law doctrine of implied waiver focuses on the conduct of the communicant and whether such conduct is consistent with a desire to maintain the privilege. *See Church of Jesus Christ of Latter–Day Saints,* 159 Ariz. at 29, 764 P.2d at 764.

¶ 21 Therefore, Archibeque's privilege under A.R.S. § 13–4062(3) was not waived by the presence of his wife during the confession.

¶ 22 Other jurisdictions have reached similar conclusions when confronted with the question whether waiver should apply when a third party is present during the confession. The Georgia Court of Appeals held that a communicant's statements to an ordained minister in the presence of the communicant's daughters did not waive the clergy-penitent privilege. *Alternative Health Care Sys., Inc. v. McCown,* 237 Ga.App. 355, 514 S.E.2d 691, 697 (1999). The court explained that the minister "testified that she was made available to provide spiritual comfort to 'the family.' [Defendant] has cited no authority for the proposition that the clerical privilege is waived by the presence of more than one person seeking spiritual comfort or counseling, and the law on other privileges indicates the opposite." *Id.* Additionally, the Court of Appeal of Louisiana found that a defendant's statements to his preacher, though in the presence of the defendant's wife, the victim, and the victim's wife, were nonetheless privileged. *State v. Ellis,* 756 So.2d 418, 419–21 (La.Ct.App.1999). In reaching this conclusion, the court found it important that "the communication at the meeting was made privately and not intended for further disclosure," and "[t]he meeting was held after work hours in [the pastor's] office at the church with the door shut. They met with him in his office at the church for a counseling session regarding the incident at issue. [He] was the pastor of their church and was attempting to counsel the couples in order to help them reconcile their differences." *Id.* at 421.[2]

¶ 23 The State further contends that the privilege is waived because Archibeque revealed the privileged information to his wife prior to confessing to the Bishop. In support of its position, the State relies upon *Church of Jesus Christ of Latter–Day Saints.* In *Church of Jesus Christ of Latter–Day Saints,* this court determined that the

---

**2.** We recognize that other courts have found a waiver when a third party was present during the confession. In such cases, the third party was someone other than the communicant's spouse and usually not a person the communicant could appropriately rely upon to keep statements confidential. See, e.g., *Perry v. State,* 280 Ark. 36, 655 S.W.2d 380 (1983) (statement made in presence of police officer); *People v. Diercks,* 88 Ill.App.3d 1073, 44 Ill.Dec. 191, 411 N.E.2d 97 (1980) (statement made in presence of defendant's employer and landlord); *State v. Gooding,* 296 Mont. 234, 989 P.2d 304 (1999) (statement made in presence of minister's wife); *People v. Brown,* 82 Misc.2d 115, 368 N.Y.S.2d 645 (Sup. Ct.1974) (confession made in presence of police); *State v. West,* 317 N.C. 219, 345 S.E.2d 186 (1986) (confession made in presence of minister's wife).

clergy-penitent privilege had been impliedly waived because the communicant "revealed to the police not only the fact, but the substance of his communications" with church officials. 159 Ariz. at 29, 764 P.2d at 764. These disclosures to the police were inconsistent with assertion of the privilege. *Id.* In the instant case, however, there is no allegation that Archibeque revealed to the police, or any other third party not privy to the confession, the substance of his conversations with the Bishop. Because of these significant factual distinctions, we find *Church of Jesus Christ of Latter–Day Saints* to be inapposite.

¶ 24 Although Archibeque made statements to his wife in advance of confessing to the Bishop, his wife was not a foreign third party. She sat through the entirety of Archibeque's private confession with the Bishop, and her participation was considered by the Bishop and Archibeque as confidential. The Bishop viewed part of his duties as helping both of them and their marriage, and the wife's presence during the confession was permitted in furtherance of this purpose. Additionally, it would be inconsistent to hold that Archibeque's wife's presence during the actual confession with the Bishop did not waive the privilege but that Archibeque's statements to her prior to the privileged communication did result in waiver. Finally, the clergy-penitent privilege did not arise until Archibeque confessed to the Bishop.

¶ 25 On this record, we do not find that Archibeque's statements to his wife before they met with the Bishop constituted a waiver of the privilege.

## CONCLUSION

¶ 26 For these reasons, we affirm the trial court's conclusions that Archibeque's statements to the Bishop are privileged under A.R.S. § 13–4062(3) and that Archibeque did not waive this privilege by the presence of his wife during the communication with the

Bishop nor by confessing to his wife prior to speaking with the Bishop.[3]

CONCURRING: SHELDON H. WEISBERG, Presiding Judge, and DANIEL A. BARKER, Judge.

---

3. We have addressed in this opinion only those issues that were raised in the trial court and are properly before us. We express no opinion on such issues as whether the existence or waiver of the privilege might be affected by the wife's and the Bishop's potential duty to report the alleged misconduct in accordance with A.R.S. § 13–3620(A), the wife's possible disclosure of Archibeque's conduct to a person not present at the meeting with the Bishop, or the potential application of A.R.S. § 13–3620(L) instead of, or in addition to, A.R.S. § 13–4062(3).