# Third District Court of Appeal

## State of Florida

Opinion filed May 14, 2025.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D22-2081
Lower Tribunal No. F21-13275
_____

**Fernando Castano,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Ellen Sue Venzer, Judge.

Michael Ufferman Law Firm, P.A., and Michael Ufferman (Tallahassee), for appellant.

James Uthmeier, Attorney General, and Magaly Rodriguez, Assistant Attorney General, for appellee.

Before LINDSEY, BOKOR and GOODEN, JJ.

GOODEN, J.

The relationship between a member of the clergy and parishioner is sacred. The Legislature has placed great importance on this relationship by enacting a statute cloaking certain communications with clergy with privilege. § 90.505, Fla. Stat. (2024). This case concerns the bounds of that privilege within the context of family counseling.

**I.**

Appellant Fernando Castano appeals his conviction and sentence. He was charged with eleven counts: (1) aggravated assault with a deadly weapon; (2) robbery by sudden snatching; (3) battery; (4 - 6) lewd and lascivious molestation on a child less than twelve years of age; (7) lewd and lascivious molestation on a child between the ages of twelve and sixteen; (8) lewd and lascivious exhibition; and (9 - 11) capital sexual battery. The first three counts concern Castano's wife and stem from a domestic incident on July 27, 2021. After Castano was arrested on these initial charges, allegations of sexual abuse were made and additional charges brought.[1]

At issue is the testimony of Lakhi Dadlani, a pastor and certified counselor at Hope 4 Life. Before trial, Castano filed an invocation of clergy privilege and moved to exclude the testimony of Dadlani. Dadlani provided

---

[1] At trial, the defense's theory was that the allegations concerning sexual abuse were fabricated after the children learned Castano had a mistress.

a sworn statement to the police, and later provided an affidavit. The trial court found that the communications failed to meet the fourth requirement of section 90.505, Florida Statutes. Specifically, the court found that the defense did not prove the communication was not intended for further disclosure. As a result, the State was allowed to present Dadlani's testimony at trial.

Dadlani testified that he met Castano when he came to Hope 4 Life in 2018 or 2019. Castano sought spiritual and pastoral counseling for his family. In May or June 2021, Castano called him and asked him to meet at his son's football practice so that they could talk. There, Castano told Dadlani that he had sexual encounters with his daughter and that his wife wanted a divorce. Dadlani believed that Castano told him this information in the hopes he would speak with his wife and daughter and help restore their family. Dadlani subsequently contacted Castano's wife. Castano's wife confirmed the abuse and stressed that the family did not want to talk about this with others.

During closing arguments, the State argued:

Let's talk about Lakhi. Defense doesn't really have anything to say about Lakhi. It's a problem for them.

DEFENSE:     Objection, shifting the burden.

THE COURT:     Overruled.

At the close of trial, the jury found Castano guilty of all eleven counts. He was sentenced to life in prison. This appeal followed.

On appeal, Castano contends that the trial court abused its discretion by admitting Dadlani's testimony as it was protected by the clergy communications privilege. He further argues that this error was compounded when the State noted the privileged testimony in closing argument and improperly shifted the burden to him. According to him, these errors cumulatively deprived him of a fair trial.

## II.

## A.

The clergy communication privilege is "rooted in the imperative need for confidence and trust. The priest-penitent privilege recognizes the human need to disclose to a spiritual counselor, in total and absolute confidence, what are believed to be flawed acts or thoughts and to receive priestly consolation and guidance in return." Trammel v. United States, 445 U.S. 40, 51 (1980). See also United States v. Nixon, 418 U.S. 683, 709–10 (1974) ("And, generally, an attorney or a priest may not be required to disclose what has been revealed in professional confidence."); In re Grand Jury Investigation, 918 F.2d 374, 383 (3d Cir. 1990) ("[T]he privilege protecting communications to members of the clergy, like the attorney-client and

4

physician-patient privileges, is grounded in a policy of preventing disclosures that would tend to inhibit the development of confidential relationships that are socially desirable.").

Before the Protestant Reformation, the privilege was fully recognized in England.  Indeed, the confidentiality connected to the communication was part of the seal of the Roman Catholic confessional.  See Judge Rupert D. H. Bursell, The Seal of the Confessional, 2 Ecclesiastical L.J. 84, 84-89 (July 1990); Edward Badeley, The Privilege of Religious Confessions in English Courts of Justice Considered 75 (1865) ("In a word, if Confession is authorized, or permitted, as a religious Rite, its secrecy is authorized and permitted also; for without it, the Rite itself is neutralized, and the rules which sanction it are a dead letter. . . ."); Lennard K. Whittaker, The Priest-Penitent Privilege: Its Constitutionality and Doctrine, 13 Regent U.L. Rev. 145, 149 (2000) ("[T]he entire concept of the priest-penitent privilege stems from the Catholic sacrament . . . .").

However, after the Reformation when England was no longer a Roman Catholic nation, the privilege fell out of favor and was largely abrogated.[2]  In fact, Blackstone made no mention of the privilege in his Commentaries on

---

[2] For example, in Regina v. Hay, an English court held a Catholic priest in contempt for refusing to disclose information he learned during confession. 175 Engl. Rep. 933 (N.P. 1860).

the Laws of England.  "Because of this it is said the claimed privilege was not one at common law and, therefore, if now to be recognized must be enacted into statute . . . ."  Mullen v. United States, 263 F.2d 275, 278 (D.C. Cir. 1958).[3]  See also § 90.505, Fla. Stat., Law Revision Council Note, 1976 ("Although the privilege was not recognized at the common law, a majority of the states, including Florida, has enacted a statutory privilege covering religious denominations and organizations in general."); Seidman v. Fishburne-Hudgins Educ. Found., Inc., 724 F.2d 413, 415 (4th Cir. 1984) ("The priest-penitent or clergyman-communicant privilege has no firm foundation in common law . . . . Statutes creating the privilege vary, but generally are designed to safeguard the clergyman's status as a secure repository for the confessant's confidences.").

In 1959, the Florida Legislature made a policy determination to create the statutory clergy communications privilege.  See Ch. 59-144, Laws of Fla. This law was repealed and later replaced with the enactment of the Florida

---

[3] But the first case in the United States to address the privilege was decided under the free exercise clause—before the enactment of any statutory privilege.  People v. Phillips was an unpublished case, but was reported in full by the priest's attorney in his book: William Sampson, The Catholic Question in America 1-122 (1813).  Since that time, nearly every state has enacted statutes or evidentiary rules for the privilege.

6

Evidence Code. <u>See</u> Ch. 76-237, Laws of Fla; Ch. 78-379, Laws of Fla.

Presently, section 90.505 provides:

(1) For the purposes of this section:

(a) A "member of the clergy" is a priest, rabbi, practitioner of Christian Science, or minister of any religious organization or denomination usually referred to as a church, or an individual reasonably believed so to be by the person consulting him or her.

(b) A communication between a member of the clergy and a person is "confidential" if made privately for the purpose of seeking spiritual counsel and advice from the member of the clergy in the usual course of his or her practice or discipline and not intended for further disclosure except to other persons present in furtherance of the communication.

(2) A person has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication by the person to a member of the clergy in his or her capacity as spiritual adviser.

(2) The privilege may be claimed by:

(a) The person.

(b) The guardian or conservator of a person.

(c) The personal representative of a deceased person.

(d) The member of the clergy, on behalf of the person. The member of the clergy's authority to do so is presumed in the absence of evidence to the contrary.

§ 90.505, Fla. Stat.

7

The plain text has four requirements for the privilege to apply. First, the communication must be with a member of the clergy. Second, the communication must be made for the purpose of seeking counsel and advice. Third, the clergy member must receive the communication in the usual course of his practice. Fourth, the communication must be private and not intended for further disclosure—except to others present in furtherance of the communication. See also McDermott v. State, 360 So. 3d 1213, 1216 (Fla. 5th DCA 2023); Nussbaumer v. State, 882 So. 2d 1067, 1074 (Fla. 2d DCA 2004). There are no listed exceptions. State v. Pinder, 678 So. 2d 410, 414 (Fla. 4th DCA 1996).

The parties do not dispute that the first three elements are met. Instead, they focus on the fourth element: whether the communication was "private" and "not intended for further disclosure except to other persons present in furtherance of the communication."[4]

While several Florida cases address the presence of third parties, none involve family counseling. See Fernandez v. State, 730 So. 2d 277, 282 (Fla. 1999) (holding privilege did not apply where pastor's wife, pastor's children, appellant's girlfriend, and appellant's children were all present at

---

[4] At oral argument, the State conceded that the third person does not need to be physically present to be included in the communication.

8

time of communication and the pastor testified he met with appellant "not so privately"); State v. Gonzalez, 378 So. 3d 702, 710 (Fla. 2d DCA 2024) (holding privilege did not apply where statements made at a large meeting before entire church, and it was recorded on video). Indeed, the mere presence of another person by itself does not automatically negate the privilege. The text of the statute provides for the inclusion of some third parties in the communication: "except to other persons present in furtherance of the communication." § 90.505(1)(b), Fla. Stat.

Instead, we focus on whether the presence of the third person was essential to the furtherance of that communication or under circumstances where confidentiality was expected.[5] See generally § 90.505, Fla. Stat., Law Revision Council Note, 1976 ("Consequently, communications made in the presence of third parties not necessary to the furtherance of the communication or under circumstances where confidentiality cannot be expected, e.g., in public facilities or large groups, are not privileged."); § 90.507, Fla. Stat. (2024) ("A person who has a privilege against the disclosure of a confidential matter or communication waives the privilege if

---

[5] While controlled by different statutory provisions, this analysis is similar to other privileges in Florida. See State v. Topps, 142 So. 3d 978, 981 (Fla. 4th DCA 2014) (psychotherapist-patient privilege); Gerheiser v. Stephens, 712 So. 2d 1252, 1254 (Fla. 4th DCA 1998) (attorney-client privilege).

the person . . . voluntarily discloses or makes the communication when he or she does not have a reasonable expectation of privacy, or consents to disclosure of, any significant part of the matter or communication. This section is not applicable when the disclosure is itself a privileged communication."); Gonzalez, 378 So. 3d at 710. The context in which the statements are made is critical to this determination. Castano engaged Dadlani for family counseling. Even Dadlani thought the subject communication was so that he could help restore their family and save their marriage. Any request or implication for Dadlani to contact the wife was in this context.

Under these specific facts, we find that the inclusion of the wife in this communication was in furtherance of the family counseling. The disclosure was simply to another person within that sphere of privilege. As an integral member of that family unit, the wife was a necessary and essential participant in that communication. The record demonstrates that Castano had an expectation of privacy of the communications outside of the confines of his family and it was not intended for further disclosure. Indeed, Castano's wife stressed that the family did not wish to discuss it with others. Cf. Bottoson v. State, 443 So. 2d 962, 965 (Fla. 1983) (holding letters not privileged where defendant handed letters to ministers with the intent that

they deliver to state attorney). Equally, there is no evidence that Dadlani ever told Castano that the statements would not be kept confidential. Cf. Monroe v. State, 14 So. 3d 1205, 1206 (Fla. 4th DCA 2009) ("As to the clergy testimony, the minister testified that he warned defendant several times that he would not treat anything incriminating as confidential."). Accordingly, the statements are subject to the clergy communication privilege.

**B.**

While it does not appear that Florida courts have considered this question within the context of family or group counseling, other jurisdictions have reached a similar conclusion. In our analysis of these cases, we are cognizant that all states' laws may not be verbatim and that these cases are merely persuasive.

In State v. Ellis, 756 So. 2d 418 (La. Ct. App. 1999), the defendant, his wife, the victim, and the victim's wife all met with their pastor to discuss an incident between the men. This was a closed-door meeting at the church. Id. at 420. The trial court ruled that the privilege was waived by the presence of the victim and his wife. Id. The Louisiana appellate court disagreed and held that the statements made during that meeting were privileged and not intended for further disclosure. Id. at 420–21. It explained that the pastor was attempting to counsel the couples to help reconcile their differences. Id.

11

Louisiana's statute is similarly worded to Florida's. La. Code Evid. art. 511 ("A communication is 'confidential' if it is made privately and not intended for further disclosure except to other persons present in furtherance of the purpose of the communication.").

Likewise, in State v. Archibeque, 221 P.3d 1045 (Ariz. Ct. App. 2009), the defendant and his wife sought marriage counseling from their church bishop. When the couple met with the bishop, the defendant admitted to sexually touching his stepdaughter. Id. at 1048. The trial court found that the statements fell within the privilege and the State appealed. Id. The Arizona appellate court agreed that the statements were privileged. Id. at 1049. It found that the privilege was not waived by the presence of the wife as the defendant reasonably believed the communication would remain private. Id. at 1050. The Court noted that the wife was not a "foreign and uninterested third party" and the defendant's conduct "had a direct effect upon his wife." Id. Therefore, the wife's presence was in furtherance of the family counseling and repentance process. Id.

Similarly, in Alternative Health Care System, Inc. v. McCown, 514 S.E.2d 691 (Ga. Ct. App. 1999), a hospice patient sought spiritual counseling from a chaplain for her and her family. The chaplain spoke to the patient and her family "to provide pastoral counseling, spiritual guidance and support to

12

persons in need who requested it." Id. at 697. The Georgia appellate court found that the statements made during this family counseling were privileged. Id. It noted the lack of authority for the proposition that the privilege is waived where more than one person is seeking spiritual comfort or counseling at the same time. Id.

In State v. Studdard, 688 S.W.3d 788 (Mo. Ct. App. 2024), a minor victim and her mother met with the family's pastor and the pastor's wife for family counseling. The pastor's wife was often present when a woman sought counseling. Id. at 800. The Missouri appellate court ruled that the statements made during the family session were privileged. The presence of the victim's mother and the pastor's wife were both necessary and in furtherance of the family counseling. Id. at 802. See also Kruglikov v. Kruglikov, 217 N.Y.S.2d 845, 846 (N.Y. Sup. Ct. 1961) (holding a rabbi could not be compelled to testify as to marriage counseling sessions conducted prior to a couple's divorce proceedings).

## III.

Because we find that Castano's statement to Dadlani was subject to the clergy communication privilege, the trial court abused its discretion by allowing the subject testimony. This error was not harmless. We cannot say that there was no reasonable possibility that the error contributed to the

conviction.  State v. DiGuilio, 491 So. 2d 1129, 1135 (Fla. 1986).  Despite the State's assertions otherwise, this case presented as a he said, family said case and Castano's theory of defense was that these were false allegations in retaliation for his infidelity.  Consequently, Dadlani's testimony, as an outsider of the family, was the most important at trial—so much so, the State highlighted it in its closing and noted how problematic it was for Castano.

Nevertheless, we find that this harm only goes to the convictions concerning sexual abuse—Counts 4 – 11.  We reverse those convictions only, and affirm the three remaining convictions stemming from the July 27, 2021, incident.

Reversed in part, affirmed in part.