## A08A0024. RIDDLE v. GOLDEN ISLES BROADCASTING, LLC.
(666 SE2d 75)

ELLINGTON, Judge.

A Glynn County jury found Golden Isles Broadcasting, LLC, liable to Travis S. Riddle for defamatory statements made in a radio broadcast and awarded him $100,000 in damages. Following the grant of a new trial as to damages only, a second jury awarded Riddle $25,000. Riddle appeals, contending, among other things, that the court abused its discretion in granting a new trial as to damages only pursuant to OCGA § 51-12-12.[1] For the following reasons, we agree and reverse.

1. Riddle contends the trial court abused its discretion in finding that the first jury's award of $100,000 for slander per se was contrary to the preponderance of the evidence adduced in that trial and, therefore, erred in granting a new trial on the issue of damages only pursuant to OCGA § 51-12-12.

The record reveals that, following a hearing on Golden Isles's motion for new trial, the trial court stated that "I feel like the amount [of the verdict] is excessive, so I am going to — unless [Riddle] agrees to reduce it to sixty thousand dollars, I'm going to grant a new trial." The judge did not explain his basis for concluding that the award was excessive, noting only that he had "never seen or heard about a slander case in any of the jurisdictions where [he] was the trial judge." Riddle did not agree to remit $40,000 of the damages awarded; consequently, the court issued an order finding the award of damages "excessive in that it was inconsistent with the preponderance of the evidence," and granted a new trial "as to the issue of damages only," pursuant to "OCGA § 51-12-12 (b)."

OCGA § 51-12-12 provides:

> (a) The question of damages is ordinarily one for the jury; and the court should not interfere with the jury's verdict unless the damages awarded by the jury are clearly so

---

[1] An order granting a motion for new trial is not a final, directly appealable judgment. It may be challenged in a proper interlocutory appeal or pursued, as in this case, following the entry of the final judgment in the new trial. See *Henderson v. Henderson*, 231 Ga. 208, 208-209 (200 SE2d 867) (1973); see also OCGA § 5-6-34.

inadequate or so excessive as to be inconsistent with the preponderance of the evidence in the case.

(b) If the jury's award of damages is clearly so inadequate or so excessive as to any party as to be inconsistent with the preponderance of the evidence, the trial court may order a new trial as to damages only, as to any or all parties, or may condition the grant of such a new trial upon any party's refusal to accept an amount determined by the trial court.

(c) Only one grant of a new trial by the judge may be based upon the powers conferred by this Code section. The first grant of a new trial other than one ordered under this Code section and which order granting the new trial is not based on this Code section shall remain governed by Code Section 5-5-50.[2]

Id.[3] As the Supreme Court of Georgia has explained, "an excessive or inadequate verdict is a mistake of fact rather than of law and addresses itself to the discretion of the trial judge who, like the jury, saw the witnesses and heard the testimony." (Citation omitted.) *Moody v. Dykes*, 269 Ga. 217, 221-222 (6) (496 SE2d 907) (1998). Consequently, this Court is ordinarily loathe to interfere and "[t]he trial court's decision on a motion for a new trial [pursuant to this Code section] will be upheld on appeal unless it was an abuse of discretion." (Citation and punctuation omitted.) *Little v. Chesser*, 256 Ga. App. 228, 230 (1) (568 SE2d 54) (2002).

In the first trial, the jury found Golden Isles Broadcasting liable

---

[2] OCGA § 5-5-50 provides: "The first grant of a new trial shall not be disturbed by an appellate court unless the appellant shows that the judge abused his discretion in granting it and that the law and facts require the verdict notwithstanding the judgment of the presiding judge." We emphasize that the trial court in the instant case did not grant a new trial under this Code section.

[3] We note that OCGA § 51-12-12 became law in 1987 as part of a comprehensive tort reform legislative package. See Ga. L. 1987, pp. 915, 920 § 7; *Columbus Regional Healthcare System v. Henderson*, 282 Ga. 598, 599-600 (652 SE2d 522) (2007) ("OCGA § 51-12-12, enacted as part of the Tort Reform Act of 1987, codifies into state law the concept[s] of . . . additur [and remittitur] in connection with jury verdicts. Under the concept[s] of additur [and remittitur], if a trial court determines that an award of damages for the plaintiffs is insufficient, it would conditionally grant a new trial unless the defendant consents to an increased [or decreased] damages award for the plaintiff. Moreover, because additur [and remittitur [are] contrary to the common law, the power of additur [and remittitur] granted to trial courts under OCGA § 51-12-12 (b) must be strictly construed.") (punctuation and footnotes omitted). We also note that prior to 1987, "OCGA § 51-12-12 (Code Ann. § 105-2015) provide[d]: 'The question of damages is one for the jury, and the court should not interfere with the jury's discretion unless the damages are either so small or so excessive as to justify the inference of gross mistake or undue bias.' " *Moultrie Farm Center v. Sparkman*, 171 Ga. App. 736, 739 (4) (320 SE2d 863) (1984).

to Riddle, a private person,[4] for slander pursuant to OCGA § 51-5-10 and awarded him $100,000 in damages. Riddle produced six witnesses who testified to having heard a Brunswick, Georgia WSEG 104.1 radio personality report that Riddle had either killed the mother of his child, that the police were looking for him, or that he had been charged with murder. Jodi Howard, the woman Riddle was alleged to have murdered, was in fact alive and testified at both trials.

Two of Riddle's witnesses testified that while they personally did not believe the broadcast, Riddle's good reputation in the community suffered as a consequence. Riddle, a Brunswick-area rap musician, testified that he had established a positive image in the Brunswick community and with his growing fan base, and that his music did not condone materialism, violence, drug abuse, or the disparaging of women. In fact, in his hit song "Daddy's Little Boy," which WSEG 104.1 played as often as 42 times per week, Riddle presented himself as a positive role model for fathers. Witnesses testified that after the broadcast, radio stations (including Brunswick, Hinesville, and Savannah stations) stopped playing Riddle's music. The evidence showed that Riddle had invested heavily in his nascent music career, and he was beginning to reap the rewards — he had filled local clubs, had successfully promoted his first CD, had appeared on MTV, had launched two commercials on cable television, had moved to Atlanta to join the larger music scene, had begun building a regional fan base, and had been offered a $300,000 distribution deal by a recruiter with Universal Records — but after the Golden Isles broadcast, Riddle's career foundered, the rewards disappeared, and he had to "start over from scratch."

Golden Isles presented the testimony of radio personality Antonio Warrick, who denied making the slanderous statements, and of Golden Isles's business manager, who established the dates and times Warrick was on the air. Golden Isles, through the cross-examination of Riddle's witnesses, attempted to show that he had earned very little as a musician, that he had no written documentation to support his lost income claims, and that he made his living primarily as a part-time banquet server. Golden Isles attempted to demonstrate that Riddle's reputation did not suffer at all, and that Riddle's career suffered not as a consequence of its slander but because Riddle moved away from his Brunswick area fan base and because his one hit song had run its course.

---

[4] In *Riddle v. Golden Isles Broadcasting*, 275 Ga. App. 701, 703-706 (1) (621 SE2d 822) (2005), we reversed the trial court's order granting summary judgment to Golden Isles Broadcasting on the ground that Riddle was a public figure.

Based on this evidence, the jury found Golden Isles liable for Warrick's slanderous remarks pursuant to OCGA § 51-5-10 (a), pertaining to liability for defamatory statements in visual or sound broadcasts. Under this "defamacast" statute, when a slanderous statement is uttered "in or as a part of a visual or sound broadcast, the complaining party shall be allowed only such actual, consequential, or punitive damages as have been alleged and proved." OCGA § 51-5-10 (c). But as we have explained, "[t]he expression 'actual damages' is not necessarily limited to pecuniary loss, or loss of ability to earn money. Wounding a man's feelings is as much actual damage as breaking his limbs." (Citations, punctuation and emphasis omitted.) *Fuqua Television v. Fleming*, 134 Ga. App. 731, 734 (3) (215 SE2d 694) (1975). "Indeed, the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering." (Punctuation omitted.) *Western Broadcasting of Augusta v. Wright*, 182 Ga. App. 359, 360 (3) (356 SE2d 53) (1987), citing *Gertz v. Robert Welch, Inc.*, 418 U. S. 323, 350 (94 SC 2997, 41 LE2d 789) (1974). "Those were the damages sought by [Riddle] and they were neither forbidden by *Gertz*, nor by Georgia law." (Citations omitted.) Id.

And where, as here, the words uttered constituted slander per se by imputing the commission of a crime to another, the law infers an injury to the reputation without proof of special damages. OCGA § 51-5-4 (a) (1), (b); *Zakas v. Mills*, 148 Ga. App. 220 (251 SE2d 135) (1978). Such an injury falls within the category of general damages, "those which the law presumes to flow from any tortious act; they may be recovered without proof of any amount." OCGA § 51-12-2 (a). Therefore, in this case, the "measure or criterion of the general damages which the law infers as flowing from a slanderous statement which is actionable per se is the enlightened consciences of an impartial jury." (Citations omitted.) *Ingram v. Kendrick*, 48 Ga. App. 278 (172 SE 815) (1934). The court charged the jury on this law.

We have reviewed the transcript of the first trial, and we cannot say that the jury's award of $100,000 in general damages for slander per se was clearly so excessive as to be inconsistent with the preponderance of the evidence presented, as required by OCGA § 51-12-12 (a) and (b). The record does not support an inference that Riddle had a bad reputation such that the imputation that he was a murderer would be less damaging to him than to any other citizen. In fact, that he was building a musical career based on his reputation as a positive role model is some evidence that the slander was especially damaging to his reputation. And although Golden Isles presented some evidence that Riddle's career may have suffered as a result of his own choices or the vagaries of the music industry rather

than as a result of the slander broadcast to the heart of his fan base, we cannot say that Golden Isles's damages evidence outweighed that presented by Riddle. Therefore we must conclude that, under these circumstances, the trial court was not authorized to interfere with the jury's verdict and erred in granting a new trial as to damages under OCGA § 51-12-12 (a) and (b).

2. Given our holding in Division 1, Riddle's remaining claims of error are moot.

*Judgment reversed. Miller, J., concurs. Blackburn, P. J., concurs in the judgment only.*

DECIDED JULY 2, 2008 —
RECONSIDERATION DENIED JULY 24, 2008

*Vincent D. Sowerby*, for appellant.

*E. Michael Ruberi, McKenna, Long & Aldridge, James C. Rawls*, for appellee.