**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**November 29, 2012**

# In the Court of Appeals of Georgia

A12A1178. SMITH d/b/a SMITH AUTO DIESEL REPAIR v. REDDICK.

RAY, Judge.

Earnest Reddick, a truck driver, filed suit against Jesse Vernon Smith d/b/a Smith Auto Diesel Repair in connection with repairs Smith performed on Reddick's 1999 Freightliner truck. After a jury trial, the jury awarded Reddick $200,000 in damages. Smith appeals, and in several enumerations of error, he asserts that the trial court erred in denying his motion for new trial, or in the alternative, motion for remittitur, on the grounds that the verdict was excessive and that the evidence was

insufficient to support the verdict.[1] Because we find that the trial court did not abuse its discretion in denying this motion, we affirm.

The evidence in this case shows that in February 2005, while hauling a load for his employer, Reddick's 1999 Freightliner truck broke down near Cordele. Reddick called Smith's auto repair shop for assistance in towing the truck to the dealership. After a discussion where Smith represented that he was certified to work on Freightliner trucks, the parties agreed that the truck would be towed to Smith's shop for repairs instead. Once at the shop, Smith's employee inspected the truck and determined that one of its cylinders needed repair. At trial, the parties disputed whether Smith repaired the second or the third cylinder. Reddick testified that, over his objection, Smith repaired the truck with used parts. Smith billed Reddick $5,911.42 for the repairs. Reddick drove the truck for about sixteen more deliveries, before it broke down on April 27, 2005.

---

[1] Smith also enumerates as error the trial court's jury instructions on fraud. However, Smith provides no legal argument or citation to authority in support of this enumeration, as required by Court of Appeals Rule 25 (a) (3). This enumeration of error, therefore, is deemed abandoned. See Court of Appeals Rule 25 (c) (2).

After the truck broke down, Reddick had it towed to a Freightliner dealer at a cost of $429. The dealer found that the truck broke down because of a defective third cylinder and estimated that it would cost $31,170.30 to repair.[2]

Upon learning that the truck's failure was due to a faulty third cylinder, Reddick then called Smith, who refused to come repair the truck, claiming that he had not repaired the third cylinder. At trial, Smith testified that he had repaired the truck's second cylinder and, thus, should not be liable for any damage to the truck's third cylinder. However, Charles Powell, Smith's employee who was present during the truck's repair, testified that Smith had repaired the third cylinder and that, during the course of the litigation, "Smith called me twice to get me to testify in this case and to say that we worked on the #2 cylinder instead of the #3 cylinder, which was totally untrue." Roger Mitchell testified as an expert on tractor-trailer repair and opined that the truck's failure could be attributed either to the installation of used parts or to the improper installation of rods and cylinders.

Unable to pay for the repairs, Reddick allowed the truck to remain at Freightliner for three months until he was told to remove it from their premises. Reddick then paid $2,700 to tow the truck to a storage facility. Reddick has paid

[2] Reddick testified that he had purchased his truck for $38,000.

$3,500 in storage fees and faces an outstanding bill of $5,847.50 for costs related to storing the truck.

Because he was unable to drive his own truck, Reddick spent thirty-two months prior to trial unemployed, and when he was able to find work, it was for far less money than he had made as an owner-operator of a truck.

At the conclusion of the trial, the jury awarded a verdict in the amount of $200,000 in favor of Reddick. Smith filed a motion for a new trial, or in the alternative, motion for remittitur, which the trial court denied. Smith appeals.

1. As a threshold matter, we address the deficiencies of Smith's brief, which does not follow the form or sequences required by Court of Appeals Rule 25 (c) (1). Reddick's brief contains five enumerations of error, but those enumerations are only supported by a single argument section intended to address them all. "We caution that this Court's rules are designed to facilitate the consideration of enumerated errors and compliance with such rules is not optional."[3] Smith's failure to adhere to our rules has hampered our ability to ensure that all his enumerations not supported by argument

---

[3] (Punctuation and footnote omitted.) *Govindasamy v. Wells Fargo Bank, N.A.*, 311 Ga. App. 452, 453 (1) (715 SE2d 737) (2011).

are addressed.[4] "Accordingly, to the extent that we are able to discern which of the enumerations are supported in the brief by citation of authority or argument, we will address those enumerations."[5]

2. When an independent truck driver is not on the road, he is not earning money, so Reddick sued Smith for, among other things, his lost earnings during the time he was without use of his truck.[6] In three related enumerations of error, Smith argues that the verdict was excessive, that the evidence was insufficient to support the amount awarded, and that the trial court erred in denying his motion for new trial, or in the alternative, motion for a remittitur, on the basis of an excessive verdict. Specifically, Smith appears to argue that Reddick was not entitled to seek lost

---

[4] (Citation omitted.) *Barnett v. Fullard*, 306 Ga. App. 148, 149 (1) (701 SE2d 608) (2010).

[5] (Citation omitted.) Id. at 150 (1).

[6] Although the parties characterize Reddick's claim as one for lost wages, this is not accurate. Reddick "is an independent contractor (not an employee), and he therefore does not receive wages for his . . . services. And while the income [Reddick] received for such services could be characterized as profits in a generalized sense, the damages he seeks in tort are for his lost earnings." *Dossie v. Sherwood*, 308 Ga. App. 185, 187 n. 8 (707 SE2d 131) (2011) (emphasis omitted) (explaining distinction between lost earnings and lost profits).

earnings damages and that he did not present sufficient evidence to support his claims for lost earnings arising from the faulty repair. We disagree.

"The question of damages is ordinarily one for the jury; and the court should not interfere with the jury's verdict unless the damages awarded by the jury are clearly so inadequate or so excessive as to be inconsistent with the preponderance of the evidence in the case."[7] "A motion for new trial on the grounds that the verdict was excessive addresses itself to the discretion of the trial judge who saw the witnesses and heard the testimony."[8] Therefore, our inquiry on appeal "is confined to the question of whether the trial court abused its discretion in denying a motion for new trial."[9] On appeal, this Court will not find that the trial court erred in denying a motion for new trial unless the jury's award is "so flagrantly excessive or inadequate, in light of the evidence, as to create a clear implication of bias, prejudice, or gross mistake on the part of the jurors."[10]

---

[7] OCGA § 51-12-12 (a).

[8] (Citation and punctuation omitted.) *Zieve v. Hairston*, 266 Ga. App. 753, 760 (4) (598 SE2d 25) (2004).

[9] Id.

[10] (Citation and punctuation omitted.) Id.

Reddick was authorized under Georgia law to present evidence supporting his claim for lost earnings and to request a jury instruction on that claim. "When someone like [Reddick] suffers an injury to his person or property by the tort of another and is, as a result, unable for a time to practice his profession or occupation, he is entitled . . . to recover his lost earnings as an element of his damages."[11] "Where damages are sought for the interruption of an established business or profession, it is proper to calculate the lost income or profits by showing the amount of time lost and the average value of such loss based on operations for a reasonable period immediately prior thereto."[12] In this case, Reddick provided the following testimony in support of his claims for lost earnings: because he was unable to drive his own truck, Reddick testified that he spent thirty-two months between April 2005 and the trial in February 2011 unemployed, and when he was able to find work, he earned far less money than

---

[11] (Citations and punctuation omitted.) *French v. Dilleshaw*, 313 Ga. App. 834, 836 (1) (723 SE2d 64) (2012) (independent truck driver unable to work while his flatbed trailer received repairs necessitated by defendant's tortious act was entitled to seek lost earnings). Accord *Dossie*, supra at 188-189 (independent truck driver unable to work as a result of personal injury entitled to seek lost earnings); *The Kroger Co. v. Perpall*, 105 Ga. App. 682, 685-687 (3) (125 SE2d 511) (1962) (dentists unable to practice dentistry as a result of property damage entitled to seek lost earnings).

[12] (Citation omitted.) *The Kroger Co.*, supra at 686 (3).

he had made as an owner-operator of a truck. Reddick testified that he was paid weekly as an independent contractor for Watkins Motor Lines, Inc., a freight-hauling company, and that his gross earnings were based on the number of loads that he hauled each week and the distance that he drove. Reddick was responsible for paying for the costs of fuel, insurance, repairs, taxes, and certain toll charges from this gross amount.

Specifically, Reddick testified that during the two-month period after Smith repaired his truck and before it broke down again, he was able to deliver about sixteen loads for his employer, earning about $20,000. Reddick testified that he estimated that his monthly net earnings were about $6,000 after accounting for expenses and taxes.

Reddick was required, however, to prove these lost earnings with a "reasonable certainty,"[13] and Smith argues that Reddick's testimony alone is insufficient to support an award of lost wages because he has not provided any documentation in support of this claim. However, Georgia law recognizes "the difficulty faced by an individual such as [Reddick] who happened to be laboring not for a fixed and definite

_____

[13] (Footnote omitted.) *Dossie*, supra at 188.

salary, but for fees or commissions in establishing a claim for lost earnings."[14] Accordingly, the law

> provides a more liberal requirement of proof under such circumstances and where by the very nature of things no better evidence is available . . . the law perforce contents itself with proof of past average earnings, not always perhaps as proof of actual lost profits, but as illustrating the earning capacity of the plaintiff, and hence the value of his lost time.[15]

Here, Reddick testified as to the average gross and net profits he earned while driving his truck. Although he did not present any tax returns, he did submit an account summary provided by his employer supporting his claim that he earned approximately $20,000 during a two-month period. Although this admittedly is not the strongest evidence that Reddick could have provided in support of his lost wages claim, it was sufficient evidence from which a jury could determine probable lost wages.[16]

---

[14] (Citation and punctuation omitted.) *Young v. Ga. Agricultural Exposition Auth.*, __ Ga. App. __ (Case No. A12A1655, decided on October 26, 2012).

[15] (Citation, punctuation and emphasis omitted.) Id.

[16] Id.; *Gipson v. Phillips*, 232 Ga. App. 235, 235-236 (501 SE2d 570) (1998) (testimony from injured plaintiff and wife as to the amount retired plaintiff earned and cleared from odd jobs was sufficient to determine "probable lost profits").

Georgia law is clear, though, that Reddick had a duty to mitigate these damages by seeking an alternate means of earning a living. "It is recognized that a property loss, as distinguished from a personal injury, would only entitle the plaintiff to damages for that reasonable period of time which it would take him to make other arrangements for carrying on his profession."[17] Reddick presented the following evidence that he did, in fact, attempt to mitigate his damages: he testified that he was unable to afford to the repairs necessary to fix his truck, and that he attempted to find work as a driver for wages, rather than as an independent contractor, but that when he was successful in obtaining such employment, it paid significantly less and that it was "hard to get miles with all the companies."[18] Accordingly, whether or not

---

[17] *The Kroger Co.*, supra at 686-687 (3).

[18] The trial court instructed parties during a hearing on their motions in limine that it would provide a jury instruction on Reddick's duty to mitigate his damages. However, it does not appear from the transcript that the trial court did in fact give the proposed instruction. However, we will not address that issue as Smith did not object to this omission after the jury instructions were presented to the jury and he did not raise the issue in his motion for new trial or on appeal. See *Safe Shield Workwear LLC v. Shubee, Inc.*, 296 Ga. App. 498, 500-501 (2) (675 SE2d 249) (2009).

Reddick's efforts to mitigate his damages were reasonable became a question for the trier of fact.[19]

Based upon the above, we find that the evidence presented at trial authorized the jury's verdict, and thus, the trial court did not abuse its discretion in denying Smith's motion for new trial, or in the alternative, motion for a remittitur.

*Judgment affirmed. Miller, P. J., and Branch, J., concur.*

---

[19] See *Young*, supra ("[I]t is for the jury to weight witness credibility.") (citations omitted).