306 Ga. 847
FINAL COPY

S18G1189, S18G1190. ROCKDALE HOSPITAL, LLC v. EVANS et al.; and vice versa.

BETHEL, Justice.

We granted certiorari in Case Number S18G1189 to consider (1) the standard that appellate courts should apply when reviewing a trial court's ruling on a claim under OCGA § 51-12-12, and (2) whether the Court of Appeals properly applied that standard in this case. In Case Number S18G1190, we asked whether it was error for the Court of Appeals to remand the case for a retrial on both liability and damages, assuming the proper standard of review had been applied. We conclude that the Court of Appeals applied the wrong standard in reviewing the trial court's decision, and so we vacate the judgment and remand the case with direction to apply the standard set forth in this opinion. We, therefore, do not reach the question posed in Case Number S18G1190.

1. Viewed in the light most favorable to the plaintiffs, who

prevailed at trial, the underlying facts, as the Court of Appeals presented them, are as follows:

> [O]n the night of Saturday, January 14, 2012, [Janice K.] Evans, who was 60 years old, woke up with the worst headache that she had ever experienced, jumped out of bed, and vomited on herself. She then had episodes of vomiting and diarrhea throughout the night. Mrs. Evans believed that she was suffering from food poisoning and had become dehydrated. However, a severe "thunderclap" headache, commonly described by patients as the worst headache in their life, followed by vomiting and nausea, are common symptoms associated with bleeding in the brain.
> Mrs. Evans's symptoms did not subside over the next two days, and around 8:00 p.m. on Monday, January 16, 2012, [Shaun G.] Evans, her husband, drove her to the [defendant Rockdale Hospital ("Rockdale")] emergency room. After arriving there, Mrs. Evans complained of dehydration, headache, diarrhea, and nausea, and she told the nursing staff that she might have food poisoning from a local restaurant. The triage nurse failed to document Mrs. Evans's initial complaint of headache in the medical chart and chose the charting template on the computer for digestive system illness, which remained the template used by the nursing staff throughout Mrs. Evans's stay in the emergency room.[1]
>
> The triage nurse documented Mrs. Evans's initial blood pressure as 213/105, a blood pressure within the

---

[1] Rockdale maintains on appeal that the triage nurse and later, an ER doctor, were not informed that Mrs. Evans was experiencing a headache or that the headache and associated symptoms had started several days earlier.

American Heart Association's guidelines for hypertensive crisis. All of the blood pressure readings subsequently taken by the emergency room nursing staff reflected that Mrs. Evans had a continued systolic blood pressure of over 200, which is "extremely high" and also can be a sign of bleeding in the brain. Additionally, Mrs. Evans requested medication for a severe throbbing headache, which she described as an 8 out of 10 on the hospital pain scale. Despite her complaint of a severe headache and high blood pressure, the nursing staff did not ask Mrs. Evans focused questions about her headache and thus did not learn from her and document in the medical chart that her initial onset of symptoms had involved her waking up with the most severe headache of her life.

Mrs. Evans was diagnosed with high blood pressure, nausea, and vomiting, with no specific cause identified. The emergency room physician told Mrs. Evans that he was concerned about her high blood pressure and that she needed to see her primary care physician that week. Mrs. Evans was discharged from the emergency room in the early morning hours of January 17, 2012, and was instructed to return if her condition worsened.

After Mrs. Evans was discharged, Mr. Evans called a local primary care practice and made Mrs. Evans an appointment for the following Monday, the first available appointment. Mrs. Evans's severe headache and vomiting returned after she was discharged, and she continued to have those symptoms throughout the week. She fell several times during the week and had to crawl back to bed on at least one occasion. On January 22, 2012, Mr. Evans called 911 after Mrs. Evans began moving her mouth unnaturally while eating and was unable to get up from the couch.

Mrs. Evans was transported by ambulance to the Rockdale emergency room, where a CT scan showed a

blood clot in her brain. She was transferred to Emory Hospital, and further testing revealed that she had suffered several strokes as a result of a ruptured brain aneurysm. Mrs. Evans underwent multiple surgeries and spent months in the hospital and a rehabilitation facility. She is permanently and totally disabled, is incontinent, requires a feeding tube, cannot speak, has severe cognitive and other impairments, has a seizure disorder, and requires 24-hour care.

In August 2013, Mr. Evans, individually and as guardian of Mrs. Evans, sued Rockdale for medical malpractice and loss of consortium. During the trial, the parties disputed whether Mrs. Evans suffered from a ruptured brain aneurysm when she presented at the emergency room on January 16, 2012, whether a diagnosis of a ruptured aneurysm on that date would have led to a better outcome, and whether the Rockdale emergency room nurses violated the standard of care. Rockdale also argued that Mrs. Evans's fault exceeded that of Rockdale because, among other things, she had not obtained treatment for her longstanding, uncontrolled hypertension despite being aware of that condition.

As to damages, the plaintiffs presented medical billing records reflecting that Mrs. Evans's total past medical expenses were $1,196,288.97, as well as testimony regarding the procedures and rehabilitation that she had to undergo after the ruptured aneurysm up to the point of trial. The plaintiffs also presented evidence of future medical expenses, past and future lost wages, and of Mrs. Evans's current impaired condition requiring 24-hour care. Mr. Evans and a certified nurse's aide testified to the care that had to be provided to Mrs. Evans, and the jury was shown a day-in-the-life video reflecting the care provided by Mr. Evans and the nurse's aide.

Rockdale did not contest that Mrs. Evans was

4

catastrophically injured and did not address the issue of damages during closing argument. During the cross-examination of the plaintiffs' damages experts who opined on Mrs. Evans's lost wages and future medical expenses, Rockdale did challenge the experts' credibility and the extent of the damages sought for future medical expenses.

Following its deliberations, the jury returned its verdict on a special verdict form. In Section 1 of the verdict form, the jury awarded Mrs. Evans the amount she had requested in damages for past medical expenses ($1,196,288.97), but awarded her zero damages for future medical expenses, zero damages for past and future lost wages, and zero damages for past and future pain and suffering. The jury awarded Mr. Evans $67,555 in damages for loss of consortium. In Section 2 of the verdict form, the jury apportioned fault among the parties, finding that Rockdale was 51 percent at fault and that Mrs. Evans was 49 percent at fault. The trial court reduced the amount of damages awarded by the jury in proportion to the percentages of fault and entered judgment in favor of the plaintiffs and against Rockdale in the amount of $586,191.60 for past medical expenses and $33,101.95[2] for loss of consortium.

The plaintiffs filed a motion for additur or for a new trial on the ground that the jury's award of damages against Rockdale was so clearly inadequate as to be inconsistent with the preponderance of the evidence. The plaintiffs contended that any new trial ordered by the trial court should be limited to the issue of damages. Rockdale opposed the motion, contending that the jury's damages award should not be disturbed and that any

---

[2] Mr. Evans argues on appeal that this award was for the cost of renovating his house to accommodate Mrs. Evans's disability, which he argues is legally not an item of consortium damages at all.

> retrial could not be limited to the issue of damages because the case involved comparative negligence. Following a hearing, the trial court denied the plaintiffs' motion for additur or a new trial on damages[.]

(Footnote omitted.) *Evans v. Rockdale Hospital, LLC*, 345 Ga. App. 511, 512-514 (813 SE2d 601) (2018).

The plaintiffs appealed to the Court of Appeals, which reversed the trial court's denial of the motion and ordered a retrial of the entire case. See *Evans*, 345 Ga. App. at 516-521. More specifically, the Court of Appeals concluded that the jury's award of zero damages for Mrs. Evans' past pain and suffering was "so clearly inadequate under a preponderance of the evidence as to shock the conscience and necessitate a new trial under OCGA § 51-12-12 (b)." Id. at 512.

2. Turning to the first question on certiorari, Rockdale argues that the Court of Appeals erroneously applied a "preponderance of the evidence" standard in reviewing the damages award. We agree.

(a) *OCGA § 51-12-12 (a) sets forth a standard for the trial court to apply when reviewing jury damages awards.*

OCGA § 51-12-12 (a) provides: "The question of damages is

6

ordinarily one for the jury; and the court should not interfere with the jury's verdict unless the damages awarded by the jury are clearly so inadequate or so excessive as to be inconsistent with the preponderance of the evidence in the case." In such instances, subsection (b) provides, "the *trial court* may order a new trial as to damages only, as to any or all parties, or may condition the grant of such a new trial upon any party's refusal to accept an amount determined by the *trial court*." (Emphasis supplied.)

> As we have previously held, OCGA § 51-12-12 allows
>
> the *trial court* to interfere with a jury verdict in two opposite situations — where the award is so inadequate or so excessive as to be contrary to the preponderance of the evidence. . . . Moreover, an excessive or inadequate verdict is a mistake of fact rather than of law and addresses itself to the discretion of the trial judge, who, like the jury, saw the witnesses and heard the testimony. In fact, the trial court's approval of the verdict creates a presumption of correctness which is not to be disturbed absent compelling evidence.

(Citations omitted; emphasis in original.) *Moody v. Dykes*, 269 Ga. 217, 221-222 (6) (496 SE2d 907) (1998). By its plain text, OCGA § 51-12-12 pertains only to the discretion of the trial court. Under this

framework, the trial court is authorized to review an award and to determine whether the damages awarded were within the range authorized by a preponderance of the evidence.  See *Moody*, 269 Ga. at 221-222 (6).

(b)  *Appellate courts review the trial court's decision under OCGA § 51-12-12 only for abuse of discretion.*

Appellate review, by contrast, involves a different analysis. While trial courts have discretionary powers to set aside verdicts based on an analysis of the evidence they observed as described in OCGA § 51-12-12, appellate review is confined to the question of whether the trial court abused its discretion in deciding the motion for new trial on this ground.  See *Lisle v. Willis*, 265 Ga. 861, 863 (3) (463 SE2d 108) (1995); *Smith v. Reddick*, 319 Ga. App. 269, 271-272 (2) (735 SE2d 15) (2012); *Zieve v. Hairston*, 266 Ga. App. 753, 760 (4) (598 SE2d 25) (2004).  To begin with, the appellate court must ensure that the trial court actually exercised its discretion in reviewing the award.  See *White v. State*, 293 Ga. 523, 524-525 (2) (753 SE2d 115) (2013) (where the trial court's application of the

8

wrong standard indicates that it failed to apply its discretion, the trial court's failure constitutes error).  A trial court abuses its discretion when the exercise of discretion was infected by a significant legal error or a clear error as to a material factual finding.  See *State v. Hill*, 295 Ga. 716, 718 (763 SE2d 675) (2014); *Ford Motor Co. v. Conley*, 294 Ga. 530, 538 (2) (757 SE2d 20) (2014). In addition, a verdict that is so excessive or inadequate as to be irrational and thus the apparent result of jury bias, prejudice, or corruption has long been considered subject to appellate correction.[3] See *Smith v. Miliken*, 247 Ga. 369, 372 (3) (276 SE2d 35) (1981) (in considering the excessiveness of a verdict, "an appellate court does not have the broad discretionary powers invested in trial courts to set aside verdicts, and where the trial court before whom the witnesses appeared had the opportunity of personally observing the

---

[3] This sort of appellate review of damages verdicts traces back to the common law.  See, e.g., *Lang v. Hopkins*, 10 Ga. 37 (1851) (considering the impartiality and honesty of the jury in reviewing a damages award to determine if it was excessive); *Macon & W. R. Co. v. Winn*, 26 Ga. 250, 256 (1858) (considering whether a verdict was so "outrageously excessive" as to force the conclusion that the jury must have been "actuated by improper influences, passion, partiality, prejudice or corruption").

witnesses has approved the verdict, this court is without power to interfere unless it is clear from the record that the verdict of the jury was prejudiced or biased or was procured by corrupt means" (citation and punctuation omitted)). The Court of Appeals has alternatively attempted to conceptualize this standard as a verdict whose amount "shock[s] the conscience." See, e.g., *Multimedia Technologies v. Wilding*, 262 Ga. App. 576, 580 (5) (586 SE2d 74) (2003) ("Even though the evidence is such as to authorize a greater or lesser award than that actually made, the appellate court will not disturb it unless it is so flagrant as to shock the conscience." (citation and punctuation omitted)); *Peterson v. First Franklin Financial Corp.*, 201 Ga. App. 849, 850 (412 SE2d 612) (1991) (same). Of course, the "conscience" to be considered is not the personal or individual conscience of any particular judicial officer; rather, it is the judicial conscience, which is always offended by jury verdicts that are so irrational as to be the apparent result of bias, corruption, or prejudice. However framed, the threshold for an appellate court to set aside a jury verdict approved by the trial court under OCGA §

10

51-12-12 (a) is "extremely high." *Moody*, 269 Ga. at 222 (6) ("[T]he trial court's approval of the verdict creates a presumption of correctness which is not to be disturbed absent compelling evidence.").

It was therefore error for the Court of Appeals to conclude in this case that the zero damages award for past pain and suffering was "clearly inadequate under a preponderance of the evidence[.]" *Evans*, 345 Ga. App. at 516 (1). The Court of Appeals could not substitute its judgment for that of the trial court on the fact-based question of whether the damages awarded were within the range authorized by a preponderance of the evidence; the Court of Appeals instead should have limited its review to whether the trial court, who saw the witnesses and heard the testimony, abused its discretion in denying the motion for a new trial.

In so holding, we must disapprove of *Robinson v. Star Gas of Hawkinsville*, 269 Ga. 102, 104 (2) (498 SE2d 524) (1998), in which we held, inter alia, that purportedly inadequate damage awards are subject to judicial review in comparative fault cases, to the extent

11

that it can be read to suggest that appellate courts may review a jury's verdict to determine whether it was consistent with a preponderance of the evidence adduced at trial.[4] That task is reserved for the trial court.

3. In view of our disposition in Division 2, the parties' contentions regarding the propriety of remanding the case for a retrial on both liability and damages, or on damages alone, are premature. As these are the only questions on which this Court granted certiorari, we do not reach the issue of whether the verdict was actually inconsistent (rather than merely inadequate) and is

---

[4] We also disapprove of the following Court of Appeals cases on similar grounds: *Atlanta Emergency Svcs. v. Clark*, 328 Ga. App. 9, 15 (3) (761 SE2d 437) (2014); *Giles v. Heyward*, 315 Ga. App. 409, 413 (5) (726 SE2d 434) (2012); *Riddle v. Golden Isles Broadcasting*, 292 Ga. App. 888, 891 (1) (666 SE2d 75) (2008); *Hilb, Rogal & Hamilton Co. of Atlanta v. Holley*, 295 Ga. App. 54, 59-60 (3) (670 SE2d 874) (2008); *Brown v. Penland Constr. Co.*, 276 Ga. App. 522, 527 (4) (623 SE2d 717) (2005); *Wells Fargo Home Mtg., v. Cook*, 267 Ga. App. 368, 369 (1) (599 SE2d 319) (2004); *Sims v. Heath*, 258 Ga. App. 681, 688 (8) (577 SE2d 789) (2002); *Shasta Beverages v. Tetley USA*, 248 Ga. App. 381, 385-386 (2) (546 SE2d 800) (2001); *J.B. Hunt Transport, v. Brown*, 236 Ga. App. 634, 637 (3) (512 SE2d 34) (1999); *Joiner v. Lane*, 235 Ga. App. 121, 127 (5) (508 SE2d 203) (1998); *Williams v. Worsley*, 235 Ga. App. 806, 808-809 (4) (510 SE2d 46) (1998); *Richardson v. Downer*, 232 Ga. App. 721, 722-723 (1) (502 SE2d 744) (1998); *Ballard v. Warren*, 222 Ga. App. 357, 357 (2) (474 SE2d 259) (1996). We note that this list may not be exhaustive.

therefore void under *Anthony v. Gator Cochran Constr.*, 288 Ga. 79,

79 (702 SE2d 139) (2010).[5]

*Judgment vacated and case remanded with direction. All the Justices concur.*

DECIDED OCTOBER 7, 2019.
Certiorari to the Court of Appeals of Georgia — 345 Ga. App. 511.
*Huff Powell & Bailey, Daniel J. Huff, R. Page Powell, Jr., Sharonda B. Barnes*, for appellant.
*Lloyd N. Bell; S. Leighton Moore III; Lawrence B. Schlachter; James O. Wilson, Jr.*, for appellees.
*Shook, Hardy & Bacon, Philip S. Goldberg, Leonard Searcy II*, amici curiae.

---

[5] The Evanses have expended considerable effort in the lower courts and in this Court asserting that the verdict rendered in this case is inconsistent because it does not comply with the general rule that a damages award for medical expenses necessarily requires damages for pain and suffering. See, e.g., *Bibb County v. Ham*, 110 Ga. 340,341 (35 SE 656) (1900) ("[T]he law infers bodily pain and suffering from personal injury[.]"(citation and punctuation omitted)); *Clark v. Wright*, 137 Ga. App. 720, 722 (1) (224 SE2d 825) (1976) (same). But *inconsistency* in a verdict is not the same as *inadequacy* of a verdict, and the consequences differ for each. In particular, under our precedent, a contradictory verdict is entirely void and requires a new trial, not additur or a retrial on damages alone. See *Anthony*, 288 Ga. at 79 ("In a civil case, a verdict that is contradictory and repugnant is void, and no valid judgment can be entered thereon. A judgment entered on such a verdict will be set aside." (citation and punctuation omitted)). See also *Howell v. Ansley*, 169 Ga. App. 935, 936 (1) (315 SE2d 476) (1984) (inconsistent verdicts required new trial where jury returned a defense verdict on pain and suffering in a suit brought by the plaintiff but then, in a second suit presenting the same evidence brought by the plaintiff's father, awarded the plaintiff's father medical expenses). Here, we did not grant certiorari on this question, the parties did not raise *Anthony* or brief the issue raised therein, and we decline to decide it at this time.