**FIFTH DIVISION**
**MERCIER, C. J.,**
**MCFADDEN, P. J., and RICKMAN, P. J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**March 5, 2025**

# In the Court of Appeals of Georgia

A24A1743. SOUTHERN CLEARING & GRINDING, INC. v. GARCIA.

MCFADDEN, Presiding Judge.

A jury found in favor of Jose R. Garcia and awarded him compensatory and punitive damages in his action against Southern Clearing & Grinding, Inc. Garcia was injured as a resulted of Southern Clearing's tree-cutting operations in the median of Interstate 85. A tree fell across both northbound lanes and struck Garcia's vehicle. The trial court entered judgment on the verdict and denied Southern Clearing's motion for new trial.

On appeal, Southern Clearing argues that the trial court erred in permitting Garcia's trial counsel to make improper arguments in closing, but Southern Clearing did not object to those arguments at trial and this alleged error is not subject to plain-

error review. Southern Clearing also argues that the trial court should have granted it a new trial because the award of compensatory damages was excessive, but it has not shown that the trial court abused his discretion in denying the new trial motion. So we affirm.

1. *Facts and procedural history*

Garcia was injured on December 15, 2016, when a tree fell onto an interstate highway and struck the vehicle Garcia was driving. The tree had been dropped by Southern Clearing, which was doing clearing work on the side of the highway at the time. Southern Clearing admitted that it had acted negligently, and the trial focused on causation and damages.

Viewed in the light most favorable to the judgment, the trial evidence showed that Garcia sustained several injuries when the tree fell on his vehicle. Immediately afterward he was sore, experienced constant migraine headaches, had cuts on several places of his body, and had glass in both eyes, which became infected. He was later diagnosed with a hip injury that his doctor opined was a prior condition aggravated by the accident. Some of his injuries resolved over time. For example, his shoulder was injured to the point that at first he could not lift a gallon of milk, but ultimately the

injury healed. The injuries to his eyes also healed, although they left scarring and have a tendency to become irritated.

But Garcia has experienced other medical issues that are more permanent. For example, at the time of the trial in August 2023, he was still experiencing frequent, debilitating headaches; shoulder and neck pain; and hip and back pain. Chronic pain prevented him from sleeping well and physically exhausted him, and he described sometimes needing help to get out of bed in the mornings and out of his car in the evenings.

These issues have impacted Garcia's life. At the time of the accident, he owned a trucking business, but he testified that after the accident he "ha[d] to let go of [his] truck and the dreams of still being able to run [his] own business." His relationships with his wife and children have suffered. He can no longer engage in certain activities with his children or participate in certain household work, such as cooking. And he no longer is able to participate in activities that he had enjoyed before the accident, such as horseback and motorcycle riding, bowling, woodworking, and hiking.

Garcia has seen numerous medical professionals to address his injuries, one of whom has recommended that he have hip surgery. Garcia could have up to a year of

recovery after the surgery, but his doctor opined that, without it, he would continue to experience hip pain. And a medical expert opined that even if the surgery went well, "it's near certainty that [Garcia] would continue to have some pain and possibly limitations of range of motion in his hip. . . ." At the time of trial, the cost of his medical treatments was $30,879.30 and the cost of the recommended surgery was $54,165.79, for a total of $85,045.09 in past and future medical treatments.

After bifurcated deliberations, the jury reached verdicts in Garcia's favor of $2.5 million in compensatory damages and $10,000 in punitive damages. The trial court entered judgment on those verdicts. Southern Clearing moved for a new trial, asserting the general grounds and, alternatively, arguing that the verdict was excessive under OCGA § 51-12-12. After a hearing, the trial court denied the motion.

2. *Improper closing argument*

Southern Clearing argues that the trial court erred by allowing Garcia's counsel to make arguments during closing that were improper and violated the trial court's earlier ruling on a motion in limine. It concedes that it did not contemporaneously object when the arguments were made but argues that the allegedly improper arguments constituted plain error.

A "contemporaneous objection is required when the moving party believes a motion in limine has been violated during argument[.]" *Williams v. Harvey*, 311 Ga. 439, 451-452 (2) (858 SE2d 479) (2021). And this alleged error is not subject to plain-error review. See *Keller v. State*, 308 Ga. 492, 497 (2) (a) (842 SE2d 22) (2020) (plain-error review in Georgia is limited to "the sentencing phase of a trial resulting in the death penalty, a trial judge's expression of opinion in violation of OCGA § 17-8-57, . . . a jury charge affecting substantial rights of the parties as provided under OCGA § 17-8-58 (b), and . . . rulings on evidence . . . affecting substantial rights [as provided under] OCGA § 24-1-103 (d)") (citation and punctuation omitted); *Williams*, 311 Ga. 451 (1) (claims of "error based on unobjected-to argument at trial in civil cases" are not subject to plain-error review).

"Accordingly, [Southern Clearing] has waived any argument regarding an improper closing argument, and this enumeration presents nothing for our review." *Berryhill v. Daly*, 358 Ga. App. 139, 140 (854 SE2d 338) (2021).

3. *Denial of motion for new trial*

In its remaining enumerations of error, Southern Clearing argues that the trial court erred in denying its motion for a new trial, which it sought on the ground that

the compensatory damages awarded by the jury were "so excessive as to be inconsistent with the preponderance of the evidence," OCGA § 51-12-12 (a), and on the "general grounds," OCGA §§ 5-5-20 and 5-5-21. We find no error.

(a) *Allegedly excessive damages award*

Southern Clearing argues that the jury's $2.5 million award for compensatory damages was excessive because it "did not reflect Garcia's true damages." It argues that the award far exceeded Garcia's medical expenses and suggests that improper arguments made by Garcia's counsel in closing motivated the jury to include punitive considerations in the award.

"Damages are given as compensation for injury; generally, such compensation is the measure of damages where an injury is of a character capable of being estimated in money." OCGA § 51-12-4. This question "is ordinarily one for the jury; and the court should not interfere with the jury's verdict unless the damages awarded by the jury are clearly so inadequate or excessive as to be inconsistent with the preponderance of the evidence in the case." OCGA § 51-12-12 (a). Southern Clearing's "motion for new trial on the grounds that the verdict was excessive addresses itself to the discretion of the trial judge who saw the witnesses and heard the

testimony. Therefore, our inquiry on appeal is confined to the question of whether the trial court abused [his] discretion in denying [the] motion for new trial." *Smith v. Reddick*, 319 Ga. App. 269, 271 (2) (735 SE2d 15) (2012) (citations and punctuation omitted).

"[T]he threshold for an appellate court to set aside a jury verdict approved by the trial court under OCGA § 51-12-12 (a) is extremely high." *Rockdale Hosp. v. Evans*, 306 Ga. 847, 852 (2) (b) (834 SE2d 77) (2019) (citation and punctuation omitted). There are

> three instances where an appellate court can determine that the trial court abused its discretion in reviewing a verdict under OCGA § 51-12-12: (1) where the trial court failed to exercise its discretion in reviewing the award; (2) where the trial court's exercise of discretion was infected by a significant legal error or a clear error as to a material factual finding; or (3) where the verdict was so excessive or inadequate as to be irrational and thus the apparent result of jury bias, prejudice, or corruption.

*Evans v. Rockdale Hosp.*, 355 Ga. App. 33, 36 (1) (841 SE2d 449) (2020) (citation and punctuation omitted).

(i) *Failure to exercise discretion*

Southern Clearing does not argue, and the record in this case does not show, that the trial court failed to exercise his discretion under OCGA § 51-12-12.[1] We "generally presume that a trial court understood the nature of its discretion and exercised it, unless the record shows otherwise." *Green v. State*, 311 Ga. 238, 241 (1) (857 SE2d 199) (2021) (citation and punctuation omitted). The trial court did not state an incorrect legal standard in his written order and at the motion-for-new-trial hearing he addressed Southern Clearing's argument that the compensatory damages award improperly reflected punitive motivations, stating that he did not think "the jury was confused about compensatory or punitive damages[.]"

(ii) *Significant legal error or clear error as to a material factual finding*

Southern Clearing also has not shown that the trial court's exercise of discretion in considering OCGA § 51-12-12 was infected by a significant legal error or a clear error as to a material factual finding. In considering this question, we keep in mind that an excessive verdict is a mistake of fact, that the trial court, "like the jury, saw the witnesses and heard the testimony[,]" and that the trial court's "approval of the verdict creates a presumption of correctness which is not to be disturbed absent

---

[1] Southern Clearing argues that the trial court failed to exercise discretion in considering the general grounds, which we address below.

compelling evidence." *Rockdale Hosp.*, 306 Ga. at 851 (2) (a) (citation and punctuation omitted).

In this case, the jury was asked to consider pain and suffering as part of the compensatory damages award. In Georgia, damages may be "awarded for past, present, and future pain and suffering beginning at the time of the injury for which the lawsuit was filed." *Vineyard Indus. v. Bailey*, 343 Ga. App. 517, 525 (3) (b) (806 SE2d 898) (2017). Such damages "are measured by the enlightened conscience of a fair and impartial jury. There exists no yardstick against which damages for pain and suffering are to be measured[.]" *AT Systems Southeast v. Carnes*, 272 Ga. App. 671, 672 (1) (613 SE2d 150) (2005) (citation and punctuation omitted). "[A]ppellate courts should be hesitant to second-guess verdicts where the damage award is based in any significant part on pain and suffering." *Alternative Health Care Systems v. McCown*, 237 Ga. App. 355, 362 (7) (514 SE2d 691) (1999).

The trial evidence, viewed in the light most favorable to the judgment, showed that Garcia has suffered pain since the accident, that he still suffers pain, and that he will likely experience pain in the future, including pain associated with future surgery. Although Southern Clearing disputes the strength or credibility of that evidence,

nothing in the trial court's order indicates that the trial court made any erroneous factual findings or applied incorrect legal principles in concluding that the compensatory damage award was not inconsistent with the preponderance of evidence in the case. See *Geary v. Estate of Tapley*, 373 Ga. App. 561, 567 (3) (908 SE2d 324) (2024).

(iii) *Result of jury bias, prejudice, or corruption*

Finally, Southern Clearing has not shown that the jury's compensatory damages award "was so excessive . . . as to be irrational and thus the apparent result of jury bias, prejudice, or corruption." *Evans*, 355 Ga. App. at 36 (1) (citation and punctuation omitted). It asserts that Garcia's counsel made various arguments in closing that invited the jury to award compensatory damages for punitive reasons and argues that it is entitled to a new trial under our decision in *Norfolk Southern R. Co. v. Blackmon*, 262 Ga. App. 266 (585 SE2d 194) (2003).

The *Blackmon* decision is inapposite. It involved a jury award of lost wages and pain and suffering to a railway employee in an action brought under the Federal Employers' Liability Act, 45 USCA § 51 et seq. (FELA). *Blackmon*, 262 Ga. App. at 267-268. The fact that *Blackmon* involved a FELA action matters for two reasons.

First, punitive damages are not permitted in a FELA action, see *Blackmon*, 262 Ga. App. at 268 (1), so there was no reason for punitive considerations to be mentioned in closing. Here, in contrast, punitive damages were a part of the case and it was appropriate for Garcia's counsel to make arguments to the jury about them.

Second, we held in *Blackmon* that "an appellate court is charged with the duty of making its own detailed appraisal of the evidence bearing on damages" and must reverse a jury award if it determines from that appraisal that the award was punitive in nature. *Blackmon*, 262 Ga. App. at 268 (1) (citing *Central of Ga. R. Co. v. Swindle*, 260 Ga. 685, 686 (398 SE2d 365) (1990)) (punctuation omitted). The requirement of a "detailed appraisal" by an appellate court comes from federal FELA decisions holding that appellate courts make their "own independent appraisal of the evidence" to determine if a trial court abused its discretion in permitting an award to stand. *Grunenthal v. Long Island R. Co.*, 393 U. S. 156, 160 (89 SC 331, 21 LE2d 309) (1968) (citation and punctuation omitted). See *Swindle*, 260 Ga. at 686 (citing *Grunenthal*, supra). Southern Clearing makes no argument for why we must apply this "detailed appraisal" requirement in a non-FELA case, and we find it to be inconsistent with non-FELA decisions holding "that the threshold for an appellate court to set aside a

jury verdict approved by a trial court under OCGA § 51-12-12 . . . is 'extremely high' and that the trial court's approval of a verdict 'creates a presumption of correctness which is not to be disturbed absent compelling evidence.'" *Evans*, 355 Ga. App. at 37 (1) (quoting *Rockdale Hosp.*, 306 Ga. at 852 (2) (b)). See also *Alternative Care Health Systems*, 237 Ga. App. at 361-362 (7) (cautioning appellate courts against second-guessing jury awards for pain and suffering).

Southern Clearing argues that several of Garcia's arguments in closing influenced the jury to include punitive considerations in the compensatory damages award. It points to statements that if Southern Clearing "won't learn from their mistakes on their own, somebody's got to make them"; assertions that Southern Clearing's "greed [had] caused them to ignore any sense of safety"; use of analogies in a way that Southern Clearing suggests invited the jury to assess the case through their own personal experience rather than based on the trial evidence, such as comparing Southern Clearing's actions to those of a misbehaving child; suggestions that the jury could consider payments that Southern Clearing made to expert witnesses in calculating compensatory damages; argument that Garcia was entitled to "the full measure of justice"; and instruction that "the first thing" the jury should do

upon receiving the special verdict form is to "check yes on punitives." Southern

Clearing also argues that Garcia's counsel engaged in an improper "Golden Rule"

argument.[2] See generally *Myrick v. Stephanos*, 220 Ga. App. 520, 523 (4) (472 SE2d

431) (1996) ("The so-called 'Golden Rule' argument urges the jurors to place

themselves in the position of plaintiff or to allow such recovery as they would wish if

in the same position.").

As discussed above, Southern Clearing did not object to any of these arguments

at trial. "To the extent we can consider the unobjected-to arguments by (Garcia's)

counsel — an issue we do not today decide — we conclude that they do not rise to the

level of showing that the jury's verdict, in light of the totality of the evidence

presented at trial, was the product of bias, prejudice, or mistake." *Geary*, 373 Ga. App.

at 568 (3) (citation and punctuation omitted). This case included a request for punitive

damages, the trial court instructed the jury on the difference between punitive and

compensatory damages, and the trial court expressly found that the jury had not been

confused about that difference. Given that, and in light of the jury's role in deciding

---

[2] That argument was phrased in the third person, asking what a hypothetical "Mr. Sir" would wish, and the parties dispute whether it in fact was a "Golden Rule" argument.

pain and suffering, as discussed above, "we do not find that the verdict was so excessive as to be irrational or, put another way, as to shock the conscience." *Geary*, 373 Ga. App. at 568 (3) (citation and punctuation omitted).

(b) *General grounds*

Southern Clearing also argues that the trial court should have granted it a new trial on the general grounds. On appeal from the denial of a motion for new trial asserting the general grounds, we consider only whether the evidence was sufficient to support the verdict. *Gen. Ins. Svcs. v. Marcola*, 231 Ga. App. 144, 146 (2) (b) (497 SE2d 679) (1998); *Marsh v. White*, 185 Ga. App. 642, 644 (3) (365 SE2d 464) (1988). As discussed above, there was evidence at trial that supported an award of compensatory damages that included pain and suffering.

Southern Clearing asserts that the trial court used the wrong legal standard in assessing the general grounds. Unlike an appellate court, a trial court does not consider only whether the evidence is sufficient in ruling on a motion for new trial asserting the general grounds; the trial court must "exercise a broad discretion to sit as a 'thirteenth juror.' In exercising that discretion, the trial [court] must consider some of the things that [the trial court] cannot when assessing the legal sufficiency of

the evidence, including any conflicts in the evidence, the credibility of witnesses, and the weight of the evidence." *White v. State*, 293 Ga. 523, 524 (2) (753 SE2d 115) (2013) (citation and punctuation omitted). Georgia appellate courts have vacated rulings denying motions for new trial on the general grounds where the trial court considered only the legal sufficiency of the evidence and did not exercise its broader discretion. See, e. g., *Casey v. State*, 310 Ga. 421, 425 (2) (851 SE2d 550) (2020).

As discussed above, we "generally presume that a trial court understood the nature of its discretion and exercised it, unless the record shows otherwise[,]" *Green*, 311 Ga. at 241 (1) (citation and punctuation omitted), and the record in this case does not show that the trial court misunderstood the nature of his discretion. The trial court did not state an incorrect legal standard in his written order, and although he found at the hearing that "the evidence [was] sufficient to uphold the verdict[,]" he also acknowledged that he was "sitting as the thirteenth juror" and expressed his views on the credibility of some of the evidence, such as Garcia's trial testimony. Under these circumstances, we are not persuaded that the trial court failed to exercise his discretion in considering the general grounds. Compare *Allen v. State*, 296 Ga. 738, 741 (2) (770 SE2d 625) (2015) (trial court applied the proper legal standard in ruling

on a motion for new trial asserting the general grounds when, among other things, nothing in its written order indicated otherwise and it acknowledged its role as the "thirteenth juror" at the hearing) with *Alvelo v. State*, 288 Ga. 437, 439 (1) (704 SE2d 787) (2011) (trial court did not apply the proper legal standard to a motion for new trial asserting the general grounds when it "explicitly declined to consider the credibility of witnesses") (punctuation omitted).

*Judgment affirmed. Mercier, C. J., and Rickman, P. J., concur.*